1819.

Dorsey
vs
Clarke

Dorsey, *et al.* vs. Clarke, *et al.*

DECEMBER.

APPEAL from the Court of Chancery. On the 12th of March 1814, *Benjamin D. Clarke*, and *Sarah* his wife, and *Robert Yieldhall*, filed a petition against the children and heirs at law of *Richard Dorsey*, stating that *Joshua Yieldhall*, being seized in fee of a tract of land called *Norwood's Fancy*, died intestate, and without issue, leaving *Benjamin, Elizabeth, Sarah*, and *Robert Yieldhall*, his brothers and sisters, his heirs at law; that *Elizabeth* intermarried with *Stephen Joyce*, and is since dead, leaving no issue, and that *Benjamin Yieldhall* is also since dead intestate, and without issue, whereby their shares in the said land devolved upon the remaining heirs. That *Sarah* intermarried with *Benjamin D. Clarke*. That *Clarke*, and his wife *Sarah*, and *Robert Yieldhall* were the petitioners. That the said tract of land has not yet been divided between the representatives above named, although now of age; for that *Benjamin Yieldhall*, the eldest of the co-heirs, being indebted to *Vachel Robinson*, and judgment being rendered against him in *Anne Arundel* county court, his undivided share in the said land was sold, to satisfy the same, by the sheriff, in virtue of a writ of *fieri facias*, and was purchased by *Richard Dorsey*, and a conveyance thereof made to him by the sheriff. That *Richard Dorsey* is since dead, leaving the following children his heirs at law, viz. *Caleb, Richard, Edward, Mary* and *Anne*, all infants. *Prayer*, for a division of the land, &c. The petitioners afterwards obtained leave to amend their petition, by adding that when *Richard Dorsey* became the purchaser of *Benjamin Yieldhall's* interest in *Norwood's Fancy*, at the sheriff's sale, and received the sheriff's deed for the same, it was expressly stated to him, and agreed by and between *Richard Dorsey* and *Benjamin Yieldhall*, that the land was only to be held by *Dorsey*, as security for the money advanced by

If a man purchases an estate, and pays the purchase money, but takes the deed in the name of another, a trust results by construction of law to himself; and if the nominal purchaser refuses to execute a declaration of trust, the payment of the consideration may be proved by parol as before the statute of frauds and perjuries. The payment of the money is the foundation of the trust. Where the evidence was that D informed the witness that he had bought a tract of land to benefit Y, and if Y would pay him the purchase money with interest, he would convey to him the land—*Held*, that this evidence, if considered as proving an agreement between Y and D, could only operate to set up a trust on the foundation of a special contract between the parties: and that to permit such a trust to be proved by parol, would subvert the statute of frauds and perjuries. If a man employs an agent, by parol, to buy an estate, who buys it accordingly, and no part of the consideration is paid by the principal, and there is no written agreement between the parties, he cannot, since the statute of frauds, compel the agent to convey the estate to him

1819.

Dorsey
vs
Clarke

*Dorsey*, and that he would reconvey the same at any time upon the payment of the money so advanced, and the interest arising thereon. That *Dorsey*, in his life-time, never pretended to hold the land in any other way than as security for the money so paid, and the interest, but always promised and agreed to reconvey it when the money should be paid, and that he received from *Yieldhall*, in his life-time, payment of the interest on the money so advanced for *Yieldhall*. That *Richard Dorsey* made and executed his last will and testament, making his wife *Anne* his executrix, who took upon herself the execution thereof, and hath since intermarried with *Thomas H. Dorsey*. Prayer for a reconveyance to the petitioners of the interest of *Benjamin Yieldhall*, upon the payment of the money so advanced, and the interest thereon, or that the same be sold for the payment of the same; and that *subpena* be directed to the original defendants, and *Thomas H. Dorsey* and *Anne* his wife, &c. The answers of the infant defendants, by their guardian for that purpose appointed, and the answers of *Thomas H. Dorsey*, and *Anne* his wife, state that they have no knowledge of the transaction in the petition mentioned; and in answer to one of the interrogatories propounded by the petition, "Whether it does not appear from the books of the said *Richard Dorsey* that the said sum of money was loaned, and the land held as security, and the interest received by him?" they state, that it appears from the books of *Richard Dorsey*, that the said *Benjamin Yieldhall* was annually charged with the rent of the land mentioned in the petition, but what was the amount of his interest therein, or the terms of sale, they are utterly ignorant, except as far as the same may be shown from said entries. They believe that *Benjamin Yieldhall* continued in possession during his life.

Kilty, Chancellor, (July term 1815,) Decreed, that there be a partition of *Norwood's Fancy*. For which purpose a commission issued to three commissioners, directing them to make a plat of the land, and to separate the same into three equal parts, equal as may be in quantity and quality, &c. Such plat was made and the land divided into three parts or lots, numbered 1, 2, 3, and so returned by the commissioners.

Kilty, Chancellor, (December term 1815,) Decreed, that the return of the commissioners, and the division made by them, be ratified and confirmed. Also decreed, that *Benjamin D. Clarke* and *Sarah* his wife, in right of his wife, shall hold in severalty lot No. 3; that *Robert Yieldhall* shall hold in severalty lot No. 2; and that *Caleb, Richard, Edward, Mary*, and *Anne Dorsey*, shall hold in severalty lot No. 1. The defendants afterwards, by motion in open court, prayed the chancellor to open the decree, and they filed a deed from *Stephen Joyce*, and *Elizabeth* his wife, to *Benjamin Yieldhall*, dated the 15th of August

1801, "for all that undivided fourth part of the half part of *Norwood's Fancy*, now in the tenure and occupation of the said *Benjamin Yieldhall.*" Also a deed from *Joseph M'Ceney*, sheriff of *Anne-Arundel* county, to *Richard Dorsey*, dated the 12th of March 1807, stating a writ of *fieri facias* sued out of *Anne-Arundel* county court on the 30th of December 1806, on a judgment recovered therein by *Thomas Robinson* against *Singleton Warfield* and *Benjamin Yieldhall*, that the said *fieri facias* was laid upon an undivided part of a tract of land called *Norwood's Fancy*, being all the right, &c. which *Benjamin Yieldhall* had therein; and that after notice the said sheriff did, on the 9th of March 1807, expose the same to public sale, and the said *Richard Dorsey* became the highest bidder, and purchaser thereof, for the sum of $203 63, &c.

KILTY, Chancellor. The motion on behalf of the defendants to open the decree, has been considered. It being during the same term, the decree might certainly be opened, if a settlement of the matter in dispute could thereby be effected, more especially as the exceptions of the defendants to a ratification of the return and decision of the commissioners, alleging that they were entitled to a moiety of the said land, were mislaid, and not before the court. But the return and decision of the commissioners was not liable to exceptions on the face of the proceedings, the division being made pursuant to the decree and the commission. The decree was passed at July term 1815, and would be still in force even if the return was not ratified. It is therefore incumbent on the defendants to take measures for having that decree reviewed, inasmuch as the knowledge of the interest of *Benjamin Yieldhall* was within their reach, or that of their guardian.

The defendants afterwards, on the 26th of February 1816, filed their bill of review, (the infant defendants by their next friend,) stating the proceedings herein before mentioned, and alleging that the decree passed on the 22d of July 1815, is erroneous in point of law, in this that there was no legal proof before the court to show the extent of the interest of the respective parties in the land to be divided, the answer of the minor defendants, by their guardian, not being admissible evidence to affect their rights, the answer in reality being the answer of the guardian, who is sworn to it, and not the minors. Because the answers do not admit the nature and extent of the petitioners' interest, but refer them to proof to ascertain and make it out to the satisfaction of the court. Because no laches or negligence is imputable to the minor defendants for not stating the real nature of their interest in the land divided. Because a commission or some other mode of taking testimony ought to have been adopted before decree for partition passed. Because new evidence, material and relevant, has been discovered since the said

decrees of July and December 1815, passed in this cause; that is to say, the said deed from *Joyce*, and wife, to the said *Benjamin Yieldhall*, and the deed from *Joseph M'Ceney* to *Richard Dorsey*. Because the heirs of *Richard Dorsey* were entitled to a moiety or one half of the land so as aforesaid divided, instead of one third allotted to them. *Prayer* for a subpena to *Benjamin D. Clarke* and *Robert Yieldhall*, and for *Benjamin, Elizabeth, Sarah, Anne, Gabriel* and *Delila Jane Clarke*, minors, under the age of 21 years, and children and heirs at law of *Sarah, Clarke*, deceased, wife of the said *Benjamin D. Clarke*, &c. And that the said decrees be reviewed and reversed; and that there be granted to the heirs at law of *Richard Dorsey* of one moiety of the land so as aforesaid divided; and for general relief. The answers of the infant children of *Clarke*, by their guardian, state that they have no knowledge of the facts in the bill of review. *Clarke* by his answer states, that while the proceedings were depending, and before any decree was had therein, he and his wife *Sarah*, on the third of October 1814, by deed duly executed, &c. conveyed to *Robert Yieldhall* all their right, &c. in and to the said land. *R. Yieldhall* in his answer admitted the deed from *Joyce* and wife to *B. Yieldhall*, of which he was not apprised, and consequently that one half of the land passed to *Dorsey* by the sheriff's deed. That the purchase was made by *Dorsey* for the benefit of *B. Yieldhall*, who always held and used the same to the time of his death, and that the land has been ever since held by his representatives. That *Dorsey* on his death-bed told this defendant that the money paid by him for the land, with interest, was all he claimed, and that he would release it when the same was paid, at the same time requesting the defendant to tell *B. Yieldhall* to come to him, that a settlement might take place between them, while he was still living. That he can prove that *Dorsey* held the land only as security for the money, which he paid to the sheriff, and never claimed any other title to the same. A commission issued by consent to take testimony. On the petition and prayer of *R. Yieldhall*, the chancellor passed an order that *Thomas H. Dorsey*, one of the complainants in the bill of review, and *Benjamin D. Clarke*, one of the defendants, be examined as witnesses, saving all just exceptions, Testimony was taken and returned. *Benjamin D. Clarke* deposed, that *Richard Dorsey* sent for him, and told him that he had bought the land of *B. Yieldhall* at the sheriff's sale, in order to befriend him, that he wished to see *Yieldhall*; that he would give him up all the deeds for the land as soon as *Yieldhall* should repay him the purchase money, with interest thereon; and he wished *Yieldhall* to come and live with him for one year, that he should be allowed a fair price for his labour, and for various articles of personal property of said *Yieldhall*, bought by *Dorsey* at the time of the purchase of the land; and by this means *Yieldhall* would, at the end of the year, have more than discharged the whole of the debt.

That *Dorsey* told the witness he had bought at the sheriff's sale of *Fieldhall's* personal property, sundry articles, which he enumerated, believed by the witness to be worth upwards of $143, and which *Dorsey* said he would keep and allow *Fieldhall* a fair price for them in part payment of the purchase money for the land. *Robert Welch*, of *Ben.* deposed, that he acted as deputy sheriff at the sale of *B. Fieldhall's* property, real and personal, under a writ of *fieri facius*, and that *Richard Dorsey* purchased the whole. That there did seem to be a perfect understanding between *Dorsey* and *Fieldhall* relative to the sale, and that *Fieldhall* informed the witness that *Dorsey* was his friend. The following *entries*, taken from the books of *Richard Dorsey*, in his own hand-writing, were admitted in evidence. "1807, March 9th. Cash paid to sheriff, and other ex-

penses on *Benjamin Fieldhall's* property, bought by
me                                                                      $316

To one year's rent due and ending 9th of March
1808,                                                                £7  2  2¼
1808, May 6th.    By cash,                          3  15  0
June 4th.    By cash,                          3  15  0."

KILTY, Chancellor, (July term 1817.) On examining the proceedings, and considering the arguments of the counsel for *Dorsey*, I am of opinion that the moiety of the land is subject to be redeemed on payment of the principal and interest due. This opinion is formed on the whole testimony. The entry by *Richard Dorsey* of the rent, is not only for an unusual sum, but commences it at an unusual time; and his charging it as rent, was a necessary consequence of his keeping the title of the land in him as his security. As to the form of the proceedings, a reason is given by *R. Fieldhall* in his answer to the bill of review for consenting to a division. That reason ceases by the discovery of a greater interest in the land in *Dorsey's* heirs; and as the decree is liable to be reversed on the bill of review, the case is open for a division on the testimony since produced. According to what is stated in the conclusion of the abstract, the decree (after reversing the former one,) will be for a sale, the proceeds to be applied under the order of the court—*Decreed*, that the decree in the former case in December 1815, for partition, be reversed and set aside, and that the land in the proceedings mentioned be sold, &c. the trustee to bring into court the money arising from the sale, to be applied under the chancellor's direction, &c. From this decree the complainants in the bill of review appealed to this court.

The cause was argued before EARLE, JOHNSON, and DORSEY, J.

*Stephen*, for the Appellants, contended, 1. That parol evidence was not admissible to prove that *Dorsey* purchas-

ed the land for the benefit of *Yieldhall*. If *Yieldhall* had paid the money, then it would be a resulting trust, and parol evidence would be admissible to prove it. But here *Dorsey* bought the land and paid for it with his own money.

2. That if parol evidence was admissible, the testimony adduced was not sufficient to prove that *Dorsey* purchased for *Yieldhall's* benefit, if it were admissible evidence; but *Clarke* was an incompetent witness. He had been a complainant, and after filing the bill he conveyed away his interest. He is still answerable for costs.

Upon the *first* point he referred to *Willis vs. Willis*, 2 *Atk.* 71. *Lloyd vs. Spillett, Ibid* 150. *Gascoigne vs. Theving*, 1 *Vern*, 366, 367. *Botsford vs, Burr*, 2 *Johns. Chan. Rep.* 405. *Boyd vs. M'Lean*, 1 *Johns. Chan. Rep.* 582.

*Murray*, and *Brewer*, Jr. for the Appellees, on the *first* point referred to *Pow. on Cont.* 292, 296, 297, 298, 302, 305, 308, 426, 428. 5 *Vin. Ab.* 522. 2 *Eq. Ca. Ab.* 48, pl. 16. 1 *Phil. Evid.* 450, 457. *Foxcroft vs. Lister*, 2 *Vern.* 456. *Davis vs. Walsh*, 1 *Harr. & Johns.* 329. 2 *Madd. Chan.* 98. 2 *Eq. Ca. Ab.* 745. *Lane vs. Dighton*, *Ambl.* 409. *Ryall vs. Ryall, Ibid* 413; and *Lench vs. Lench*, 10 *Ves.* 511.

Dorsey, J. delivered the opinion of the Court. The statute of frauds and perjuries enacts that all declarations and creations of trusts or confidences of any lands, tenements or hereditaments, shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will and testament, or else they shall be utterly void and of none effect; provided that where any conveyance shall be made by which a trust or confidence shall or may arise or result, by the implication or construction of law, such confidence or trust shall be of the like force and effect, as the same would have been if the statute had not been made.

Can the decree appealed from be sustained on the ground of a trust resulting in favour of the complainants by construction of law?

If a man purchases an estate, and pays the money, but takes the deed in the name of another, a trust results by construction of law to the man who paid the money; and if the nominal purchaser refuses to execute a declaration of trust, the payment of the consideration money may be proved by parol, as before the statute. The payment of the money is the foundation of the trust. *Bartlett vs. Pickersgill*, cited in *note* to 4 *East*, 577. *Willis vs. Willis*, 2 *Atk.* 71. *Lloyd vs. Spillett, Ibid* 150.

The counsel for the appellees have contended, that a resulting trust in this case is established, not only by the testimony of *Clarke*, but by the entries from the books of *Richard Dorsey*. The witness proves that *Dorsey* informed him that he had bought the land to benefit *Yieldhall*, and

1819.

Dorsey
vs
Clarke

if *Yieldhall* would pay him the purchase money, with interest, he would convey to him the land.   Taking this evidence in its utmost latitude, by considering it as proving an agreement between *Yieldhall* and *Dorsey*, it could only operate to set up a trust on the foundation of a special contract between the parties; and to permit such a conventional trust to be proved by parol, would subvert the statute of frauds and perjuries,

Where a man employs an agent by parol, to buy an estate, who buys it accordingly, and no part of the consideration is paid by the principal, and there is no written agreement between the parties, he cannot compel the agent to convey the estate to him, as that would be in the teeth of the statute.   *Bartlett vs. Pickersgill.*   Neither do the entries from the books of *Dorsey* establish the facts that the purchase money was loaned by *Dorsey* to *Yieldhall.  Yieldhall* is not made debtor for the same, and the entries are such as any purchaser might make with a view of showing his disbursements, and the state of his property.   And if the charge of rent in the entry is referable to *Yieldhall*, it establishes the relation of landlord and tenant between *Dorsey* and him, which is inconsistent with the existence of a resulting trust in favour of the complainants.   It may be further remarked, that the construction put upon this entry by the counsel for the appellees, is at variance with their other proof in the cause, we mean the evidence of *Clarke*, which proves, if it proves any thing, a conventional trust.   We hold, therefore, that these entries do not plainly indicate that the purchase money was paid by *Yieldhall;* and the authorities are clear that the payment of the money by the *cestui que trust* must be clearly proved, otherwise you render insecure titles depending on deeds and other written documents.   *Willis vs. Willis,* 2 *Atk.* 70. *Lench vs. Lench,* 10 *Ves.* 517.

The next question is, was there any agreement between *Dorsey* and *Yieldhall* that the former should convey his interest in *Norwood's Fancy* to the latter, on the payment of the money, (and interest,) which *Dorsey* paid for the same; and was the agreement partly executed so as to take the case out of the statute?   Whether the liberal offer of *Dorsey*, as detailed in the testimony of *Clarke*, was accepted by *Yieldhall*, so as to constitute a contract between the parties, does not appear in proof.   If such a contract was proved, and *Yieldhall* put in possession of the land *in execution of the agreement*, we should not call in question the authority of a court of chancery to enforce it.   It has been urged that the possession of the land by *Yieldhall* sufficiently proves the case.   We do not think so.   The bill does not charge that *Yieldhall* was in the possession under the agreement, though in its interrogating part it calls on the defendants to answer, whether *Dorsey* ever dispossessed *Yieldhall* of the land, and whether *Yieldhall* did not remain in quiet and uninterrupted possession of the same? The defendants, who were of age, answer that they know

nothing of the transaction mentioned in the bill, or the circumstances connected with it, but that it appears from the books of *Dorsey* that he annually charged *Yieldhall* with rent. If the answer should be considered as impliedly admitting that *Yieldhall* was in possession of the land, it refers such possession to a contract essentially different from an agreement to convey.

Upon the whole it is the *opinion of a majority of the court*, that the decree of the chancellor be reversed.

JOHNSON, J. dissented.

DECREE REVERSED.