(Decided June 28th, 1898.)

---

## THE PRESIDENT, MANAGERS AND COMPANY OF THE BALTIMORE AND FREDERICK-TOWN TURNPIKE COMPANY *vs.* JOHN W. HEBB.

*Turnpike Companies—Negligence—Liability for Unsafe Condition of Road—Evidence—Bill of Exception.*

Several piles of unbroken stone were placed on defendant's turnpike road at a point where there was an unprotected embankment on one side several feet deep. Only about twelve feet of the road was in a proper condition for travel, while defendant's charter required it to keep the road open for a width of sixty-six feet. The piles of stone had remained on the road for several months. Plaintiff was driving along at this point on a dark night, using due care, when his horse ran into a pile of stone, and becoming frightened, ran away, upsetting the vehicle and throwing the plaintiff down the embankment. *Held*, that there was sufficient evidence to show that defendant negligently permitted the road to be in an unsafe condition for ordinary travel and that the plaintiff is entitled to recover damages for his injury.

In an action against a turnpike company for damages caused by the unsafe condition of the road at a point where there was

an unprotected embankment, a witness may be asked whether in former years there had been a railing at the place where the accident occurred.

When an exception is taken to the ruling of the Court in allowing a certain question to be asked, the answer of the witness should be set forth in that bill of exception and not in another bill.

When the charter of a turnpike company requires it to keep the road open for a specified width, it is the duty of the company to maintain the whole of this space in a safe condition for travel.

Appeal from the Circuit Court for Montgomery County (HENDERSON and MOTTER, JJ.). At the trial the plaintiff's second and third prayers, which were granted, were as follows: 2. If the jury shall find from the evidence that the defendant corporation kept open and maintained for public travel the turnpike spoken of in evidence, and charged tolls for the use thereof, then it was required to keep its said road in such condition as to be safe for persons travelling over the same with ordinary care; and if they shall further find that the defendant negligently permitted a part of its road to be in an unsafe condition for persons using the same with ordinary care, and that in consequence of such unsafe condition, the plaintiff while travelling over the said road and over said part with ordinary care, sustained the injuries complained of, then the plaintiff is entitled to recover in this case. 3. That the care required of any one travelling on a turnpike road, as stated in plaintiff's second prayer, is simply such as persons of common prudence ordinarily exercise under similar circumstances.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and PEARCE, JJ.

*William P. Maulsby*, for the appellant.

*John G. Rogers*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

John W. Hebb brought a suit against the Frederick-town Turnpike Company to recover damages for injuries alleged to have been sustained by reason of the dangerous condition of the turnpike. The plaintiff testified in his own behalf. He stated that he was travelling on the road on the night of the nineteenth of March; that about nine o'clock he reached Steep-Hill; that it is a very steep and dangerous place; that on the southern side of the hill there is a gully three or four feet deep at the crest of the hill, which gradually becomes deeper until at or near the bottom of the hill, it is twenty-five feet deep; that on the night in question there was on the crest and extending west down the hill on the same side as the gully a long pile of stones lying in the bed of the road near the southern side but on the macadamized portion; that the macadamized portion at that place was very narrow, not over thirteen feet wide; that the northern side of the road was not so steep, but he could not drive down that side with safety; that there was no fence along the pike where the accident occurred; that the night was very dark; that the stone piles were four or five in number, about two and a half or three feet high; that the stones were not broken, some were very large boulders; that there was a perch and a half of stone in each pile; that the stones had been there six or eight months; that the horse was young, but had been driven often before, and that he was reasonably safe; he was driving down the hill in a walk; that the horse got among the piles of stone, ran over three of them; that each pile was about six feet square; that when the horse ran into one pile he became frightened and ran; that the buggy was upset and broken, and the horse injured and he, himself thrown four and a half feet down an embankment and severely injured; and that there was no light on the piles of stone. There was other evidence tending to show that on the northern side of the turnpike the bank goes down very sharply and that it could not be used as a road; and that the stones had been placed on the road in the September before the accident,

and that the piles were about twelve feet long in all, and a foot or eighteen inches high.   The evidence in behalf of the defendant tended to show that the road at the place of the accident was from twenty to twenty-six and a half feet wide; that the stones encroached on the stone road two or three feet; that a man could drive on the northern side of the road with safety, and that the night was dark, but not very dark.

Two exceptions were taken at the trial.   In the first exception the plaintiff asked a witness whether in former years there had been railings at the place where the accident occurred.   The defendant excepted to this question, but the Court permitted the question to be asked and answered.   The answer of the witness is not · stated in this exception, but it appears at the beginning of the following one.   From the evidence which had been given before this question was asked, it was competent for the jury to find that the turnpike was unsafe for travellers, and that railings by the side of the gully were necessary for their safety, especially at night.   If they found that railings were necessary, it was proper that they should be informed whether there had ever been any at that place.   If none had ever been there, the neglect of the defendant would be shown to be very palpable and long continued.   But if formerly railings had been there and had been removed, it was admissible for the defendant to show, if it could, that there were sufficient causes for their removal.   If they were necessary (and this was a question for the jury to determine) they ought to have been erected, and they ought to have been continuously maintained.   As we have said, the answer of the witness is set out in the next following exception.   He said that in former years there had been railings at the place of the accident along the pike between it and the gully.   We have considered this question as if the answer had appeared in the first exception.   According to correct practice that was the proper place for it.   In *Burtles* v. *State*, 4 Md. 273, this precise question was decided.   The first exception stated that the plaintiff offered in evidence a receipt and rested

his case, and that the defendant thereupon prayed the Court to instruct the jury that such evidence was not sufficient to entitle the plaintiff to recover, which the Court refused to do. This Court said: " We discover no error in the refusal of the Circuit Court. The exception does not set out the receipt, and we are, therefore, so far as this exception is concerned, entirely without information in regard to the evidence on which the instruction of the Court was asked." In the third exception in the same case the receipt in question was set out. But bills of exceptions must be considered wholly distinct from each other unless they contain words of reference. *Gist* v. *Cockey*, 7 Harris & Johnson 134; *Armstrong* v. *Thruston*, 11 Maryland 149. If the answer of the witness is not shown in the bill of exceptions, the Court has no means of knowing whether the appellant has been prejudiced by it. This point has been decided so often, and so recently, that it is unnecessary to refer to cases.

The second exception was taken to the rulings of the Court on the prayers. Two prayers were granted in behalf of the plaintiff. They state simple and well established propositions. The defendant offered five prayers, of which four were granted and one refused. The rejected prayer is in these words: " That whether or not the road of the defendant at the place where the accident happened, was in a safe condition for travel, is a question of fact for the jury, and if the jury shall believe from the evidence that the piles of stone were not sufficiently large or high to be dangerous; that the width of road left open for travel was amply large for the customary travel; that the piling of stone for the time, and in the manner mentioned in evidence was such a reasonable user of the road where said stones were piled and for such reasonable length of time, as the needs of the road required, then there is no evidence of negligence of defendant, and the verdict of the jury must be for the defendant." The defendant was incorporated by the Act of 1804, chapter 51. The seventeenth section of this act requires it to keep the turnpike open to the

McELROY vs. JOHN HANCOCK LIFE INS. CO. 137

Md.] Syllabus.

width of sixty-six feet; and it was its duty to maintain the whole of this space in a safe condition for travel. *Baltimore and Yorktown Road* v. *Crowther*, 63 Md. 558; *Baltimore and Liberty Road* v. *Cassell*, 66 Md. 419. This duty is not discharged by leaving open a space sufficient for " customary travel." There are other objections to the prayer. Nothing is said about a railing to guard against the dangers incident to the gully. And when it refers to " the piling of stone for the time, and in the manner mentioned in the evidence," it seems to disregard the portions of the plaintiff's evidence which describes the size and number of the piles, and which state that they had been in the bed of the road for six or eight months. But passing by these objections, we think that the fact, shown by the evidence for both parties, that the road was not kept open to the statutory width is a conclusive reason for the rejection of the prayer.

*Judgment affirmed.*

(Decided June 29th, 1898.)

