JOHN H. SIELING et al. v. STATE ROADS COMMISSION et al.

[Nos. 93, 94, October Term, 1930.]

408

*Decided February 18th, 1931.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*David Ash* and *George W. Sutton,* for the appellants.

*Robert H. Archer, Assistant Attorney General,* and *William Stanley,* with whom were *Roger B. Williams, John S. Stanley* and *Hershey, Donaldson, Williams & Stanley* on the brief, for the State Roads Commission, appellee.

*George P. McCeney,* submitting on brief, for the Mayor and City Council of Laurel, appellee.

SLOAN, J., delivered the opinion of the Court.

We have here two appeals, one from an order overruling the appellants' (cross-defendants') demurrer to the appellees' cross-bill, the other from an order granting the appellees a preliminary injunction on their cross-bill restraining the appellants from interfering with the improvement of the state road known as the Baltimore-Washington Boulevard in the town of Laurel.

The appellants filed a bill wherein they alleged that Anna A. Sieling held the legal title and John H. Sieling had an equitable interest in excess of the value of $20 (Code, art. 16, sec. 109) in certain lots "abutting on a certain Washington Avenue, sometimes called Baltimore and Washington Turnpike, in said Town of Laurel"; that John H. Sieling is the attorney in fact of Anna A. Sieling and in charge of and has the active management of the lots and improvements thereon, one of the improvements being a hotel which is profitably conducted; that the government of the Town of Laurel, under its charter, Acts 1912, c. 695, is vested in a mayor and five councilmen (the town was incorporated in 1870 and its act of incorporation from time to time amended); that the State Roads Commission, a quasi corporation created by the Acts of 1908, c. 141, at present composed of G. Clinton Uhl, John K. Shaw, and Howard Bruce, who with the "Mayor and City Council of Laurel" are defendants, "desires to and is engaged in widening said certain Washington Avenue, immediately abutting on said properties of" the plaintiffs and, "acting without proper procedure or warrant * * * and without any compensation or payment" to the plaintiffs (appellants), "has attempted to widen said Washington Avenue at and abutting said properties * * * and has attempted to and

did enter upon said lands \* \* \* for the purpose of taking them as a public highway." They then say that, when John H. Sieling protested against the invasion of the said properties and ordered the employees of the State Roads Commission to get off of said lands and to stay off of them until after it shall have acquired proper legal right and title to enter thereupon they had him arrested "for the purpose of duress, intimidating and coercing" the appellants. They allege that the ordinance of the mayor and city council of Laurel, passed April 14th, 1930, transferring control of the Baltimore and Washington Boulevard to the extent to be improved to the State Roads Commission, is *ultra vires* and void, and that the alleged invasion of the appellants' properties is in violation of the State and Federal Constitutions and Bill of Rights.

The bill prayed for an injunction, and an order on the defendants (appellees) to show cause was passed.

The appellees answered, and on the day following the filing of the answer filed a cross-bill, which prayed the court to grant them a mandatory injunction to the appellants to remove all obstructions and encroachments from the bed of the Washington Avenue adjacent to and in front of their property, and to restrain them from interfering with the construction and widening of the roadway of Washington Avenue and the construction of five-foot sidewalks on each side of the roadway.

The cross-bill, in addition to the averment that the appellants owned two lots on the west side of Washington Avenue and north of Main Street, known as the hotel property, alleges that the appellants owned a lot on the same side of Washington Avenue and about 125 feet south of Main Street, known as the garage property; that the hotel property extends into Washington Avenue, and that it will be necessary to remove a small portion of a frame addition to the hotel now encroaching on the street in order to lay a five-foot sidewalk as provided by the agreement of the Town of Laurel with the Roads Commission, and that in front of both properties and in the bed of the street the appellants placed "no trespassing" signs and employed a man to stand in the road

and prevent the Roads Commission's contractor from proceeding with the improvement in front of and adjacent to the appellants' properties.

By the cross-bill it is further alleged that, by the Acts of 1812, c. 78, the Legislature incorporated a turnpike company by the name of "The President, Managers and Company of the Washington and Baltimore Turnpike Road," for the purpose of making a turnpike sixty feet in width from Baltimore to Washington; that the road was made and operated by the turnpike company until 1862, when the charter was forfeited, and that from the time it was laid out and made it has been continuously used as a public road until the present time, and that repairs were made on it from time to time, since its surrender by the turnpike company, by the county commissioners of Prince George's County, the Town of Laurel, and the State Roads Commission, in the order named; that the Town of Laurel was incorporated by the Acts of 1870, c. 260, under the name of the "Commissioners of Laurel," and by the Acts of 1890, c. 201, under the name of "Mayor and City Council of Laurel," and ever since the Act of 1870 has assumed control of the old turnpike. After the passage of the Act of 1890, the mayor and city council of Laurel, "in order to officially determine the streets of said town and the limits thereof," employed an engineer and surveyor, Benjamin A. Dashiell, to lay out and plot and mark the streets of the town, which he accordingly did, and the plat so made by him and officially adopted by the mayor and city council of Laurel was conspicuously hung in the city hall of Laurel and ever since has been recognized as the official plat of the streets of the town. The plat shows Washington Avenue to be fifty feet in width.

The mayor and city council of Laurel, by ordinance passed October 21st, 1912, granted to the State of Maryland the public easement in the bed of Washington Avenue to the extent of its title thereto, so that the same might thereafter be under the jurisdiction and control for road purposes of the State Roads Commission, with reservations of police control and such improvements as may from time to time be

made by the town. The ordinance of April 14th, 1930, was merely supplemental to the first ordinance, and provided for the improvement by the State Roads Commission of the entire width of fifty feet, to include forty feet of driveway and five-foot sidewalks. In pursuance of the ordinance of October 12th, 1912, and the Acts of 1908, c. 141, the State Roads Commission macadamized or hard-surfaced fourteen feet of the road, and later added a paved shoulder of three feet on each side, and is now, and for the past three years has been, engaged in widening the paved portion of the turnpike from Washington to Baltimore to forty feet. The cross-bill in detail shows the recognition by deeds, from 1861, of a 50-foot street on Washington Avenue from the intersection of the southerly side of Main Street, the hotel property of the appellants being across or on the northerly side of Main Street, and filed as an exhibit the Dashiell plat, showing Washington Avenue to be of the full width of fifty feet by the appellants' property through the Town of Laurel and by actual location running with the lines of the Talbott property from Main Street south. The cross-bill also avers that the street now known as Washington Avenue has been openly and notoriously used as a public road of the full width of fifty feet for more than twenty years, and that, since Anna A. Sieling acquired the first of her conveyances, September 10th, 1918, she has, by additions since made to her hotel property, encroached on the westerly side of the road or avenue.

The appellants, answering the cross-bill of the appellees, deny every act of the appellants against which relief is sought by the appellees, deny that a sixty-foot road was ever authorized by the Acts of 1812, ch. 78, and assert that the act only authorized the use of an eighteen-foot road, and then conclude the answer by demurring to the cross-bill and every part thereof for reasons which will be hereinafter considered.

The case was set for hearing on motion for a preliminary injunction, evidence received, and an order passed overruling the appellants' demurrer to the cross-bill, and a decree passed

whereby "John H. Sieling and Anna A. Sieling, their servants, agents and employees" were "strictly prohibited and enjoined until further ordered" by the court "from interfering with the State Roads Commission of Maryland, its servants, agents, employees or contractors in the widening and paving of Washington Avenue in the Town of Laurel, Prince George's County, Maryland, in front of the two properties owned by the defendant, Anna A. Sieling, being the two properties mentioned in said cross-bill and complainants' (appellees') exhibit No. 20, to a width of forty feet, provided the existing buildings and improvements on said property or properties are not broken, damaged or removed," etc., and appeals were taken by the appellants from the order overruling the demurrer to the cross-bill and from the order granting the appellees (cross-plaintiffs) a preliminary injunction.

1. The appellants' first contention is that the subject-matter of the suit could not be heard until decision on the demurrer contained in the appellants' answer to the cross-bill, and that, the demurrer not having been set down for hearing, "the matter was not ripe for ruling thereon," and "the ruling on said demurrer should be set aside and disregarded." General Equity Rule 18 provides that a demurrer may be set down for hearing at any time on five days' notice, and the appellants here contend that they were entitled to this formality before the court could pass on the demurrer. The appellants cannot even pretend that any formalities in the hearing on the demurrer were denied them with the following appearing in the record: "(The Court): Mr. Ash, I understand you first want a ruling on the demurrer? (Mr. Ash): I want a ruling on the demurrer. (The Court): The demurrer is overruled. (Mr. Ash): I now presume the plaintiffs on the cross-bill are ready to proceed."

2. The appellants complain that the cross-bill injects new matter into the case which was not included in the original bill, and that is, that it sets up the same contention and prays the same relief against the appellants as the owners of the garage property south of Main Street that it asks against

them as owners of the hotel property, north of Main Street, which was the only property mentioned in the original bill. The rule as, stated by Mr. Miller (*Equity Procedure*, 243, sec. `192) is: "A subject which is not germane to a pending controversy cannot, by means of a cross-bill, be injected into the litigation; but a cross-bill may set up additional facts not alleged in the original bill where they constitute part of the same defense and relate to the same subject matter." "It is generally considered as a defense, or as a proceeding to procure a complete determination of a matter already in litigation in the court." *Hooper v. Central Trust Co.*, 81 Md. 559, 576, 32 A. 505, 508. "A cross-bill may also be directed to be filed when, at the hearing of a cause, it appears that the suit already instituted is insufficient to bring before the court all matters necessary to enable it to decide upon the rights of all the parties." *Daniels, Ch. Pr.* (6th Am. Ed.), sec. 1550.

By alleging in the cross-bill that Anna A. Sieling owned a lot fronting on the west side of Washington Avenue less than two hundred feet south of the lot mentioned in her bill of complaint, the appellee did not import into the case a question or controversy which was not already there. There were two lots abutting on the same turnpike, both of which were being appropriated by the State Roads Commission without compensation, or both of which encroached on the same public road; but one lot and a fifty foot (Main) street separated them. If the appellees had not brought the garage lot into the case, the court could very properly have directed an amendment of the cross-bill so as to include it and the acts of ownership and claims arising therefrom with respect to the street or road. There is only one controversy common to both lots and all the parties to this case, in which all questions involved are identical. The appellees, if their contention that Washington Avenue is the old Baltimore and Washington turnpike is correct, and the appellants have encroached upon it and have interfered with the contractors, are entitled to affirmative relief, and a cross-bill is proper procedure to that end. The bill is therefore not multifarious as to subject-

matter, and, inasmuch as the appellants by the original bill have made both the State Roads Commission and the Town of Laurel parties, they cannot now object to them as improperly joined as plaintiffs in the cross-bill. *Hooper v. Cent. Trust Co.,* 81 Md. 559, 576, 32 A. 505; *Chew v. Glenn,* 82 Md. 370, 33 A. 722; *Whitman, Recvr., v. United Surety Co.,* 110 Md. 421, 72 A. 1042; *Ruhe v. Ruhe,* 113 Md. 595, 77 A. 797; *Roth v. Stuerken,* 124 Md. 404, 92 A. 808; *Whitaker v. Coudon,* 130 Md. 234, 100 A. 279; *Saul v. Sturm,* 149 Md. 629, 132 A. 158; *Oakford Realty Co. v. Boarman,* 156 Md. 65, 143 A. 644; *Buckner v. Jones,* 157 Md. 239, 145 A. 550.

3. The appellants, by their demurrer, also contend that the cross-plaintiffs have an adequate remedy at law by which their rights may be determined. A sufficient answer to that is the following quotation from *Carroll County v. Rickell,* 146 Md. 463, 469, 126 A. 711, 714: "Assuming the encroachment as alleged in the bill, the jurisdiction of a court of equity to grant relief by injunction is supported by authorities everywhere. It is the duty of a municipality to preserve the beneficial enjoyment of streets to the public."

4. The order for a preliminary injunction, from which one of the appeals is taken, limits its operation to forty feet of roadway being improved by the State Roads Commission, and forbids the commission to disturb the existing buildings and improvements. The demurrer, which assumes the truth of the allegations of the cross-bill, is broader in its application, and extends to the claim of the appellees for a fifty foot roadway. The Act of 1812 authorized and directed the turnpike company to lay out a sixty foot road, but, whether the Mayor and City Council of Laurel can waive any encroachments on its streets without legislative authority (*Ulman's Case,* 83 Md. 130, 144, 34 A. 366), need not be here discussed, as the grant of control from the Town of Laurel to the State Roads Commission is for fifty feet of the road to be improved as provided by the ordinance of April 14th, 1930, and does not extend to the remaining ten feet of the turnpike, in which the State Roads Commission has no interest.

By the Acts of 1812, ch. 78, the turnpike company was authorized to operate a toll road, subject to such control and supervision as was reserved by the General Assembly, from the District of Columbia to Baltimore. Upon its organization, provision was made for the appointment of five commissioners to "lay out a road from the City of Baltimore to the District of Columbia, by way of Norwood's ferry, on the Patapsco River, McCoy's Tavern, Vansville, White House, Ross's Tavern and Bladensburgh, on as straight a line between each of said places as the nature of the country will admit" (section 10), and by section 11 it was provided "that the commissioners aforesaid, after they shall have laid out and marked the said road, are hereby directed to return a true and correct plot, specifying the courses and bounds thereof, to each of the clerks of Baltimore, Anne Arundel and Prince George's county courts, to be by them recorded at the expense of the said body corporate; and the said road, so laid out and returned as aforesaid, and made, shall be forever thereafter taken, held and adjudged, a public road and common highway." *Patapsco Co. v. Baltimore,* 110 Md. 306, 311, 72 A. 1039. A turnpike is "a highway notwithstanding the fact that the beneficial interest in the form of tolls is in the private corporation or company. * * * It is the theory of the authorities that tolls are allowed the turnpike company to reimburse it for constructing and keeping the road in repair for safe and convenient use, and that tolls are the equivalent of taxes." *Elliott, Roads and Streets* (3rd Ed.), sec. 79; 38 *Cyc.* 363, 391.

In pursuance of the authority conferred on the commissioners and in the performance of the duties assumed by them, the five commissioners filed their report, and the plot, with courses and distances, was recorded in accordance with the Act of 1812. By section 13 it was provided "that the said president, managers and company * * * shall lay out said road sixty feet wide, and shall cause eighteen feet at least in breadth to be made an artificial road." It then prescribes the character of construction, limits the grade to "an angle of four degrees with an horizontal line, and (the turn-

pike company) shall forever hereafter, during the continuance of the said incorporation, maintain and keep the said road in the same good order and repair." By the Acts of 1860, ch. 326, "the States Attorneys for the City of Baltimore, Baltimore County, Anne Arundel County and Prince George's County" were "authorized and directed to institute proceedings in the name of the state, against the president, managers and the company of the Washington and Baltimore Turnpike Road, to ascertain whether the charter and corporate powers and franchises of said president, mangers and company, ought by reason of non user or abuser of such powers or franchises to be declared to be vacated and annulled." And it is alleged in the cross-bill that, in pursuance of this act, the franchises of the turnpike company were forfeited by appropriate proceedings in 1862; that thereafter control over the road was assumed by the county commissioners of Prince George's County until the Town of Laurel was incorporated by the Acts of 1870, ch. 260, under the name of the "Commissioners of Laurel" (by the Acts of 1890, ch. 201, changed to "Mayor and City Council of Laurel"), after which the road was maintained and repaired by the municipal authorities of Laurel until control over it for road purposes was assumed by the State Roads Commission under ordinances by the Mayor and City Council of Laurel of October 21st, 1912, and April 14th, 1930.

The effect of the forfeiture of the franchises of a turnpike is to return the road to the state, county, or municipality, as the case may be, and the obligation is then imposed upon the public authorities to maintain it for the use of the public at public expense. "It is an old maxim that, 'once a highway, always a highway' and it may justly be held that it applies as well against private corporations as against individual owners." *Elliott on Roads and Streets* (3rd Ed.), sec. 80.

"The forfeiture of the charter of the turnpike company destroyed the rights of that corporation, yet the road still remained, in fact and in law, a public highway." *Pittsburgh etc. R. Co. v. Commonwealth,* 104 Pa. 583; *State v. Maine,*

27 Conn. 641, 71 Am. Dec. 89; *Commissioner of Highways v. Cobb,* 104 Mich. 395, 62 N. W. 554. "The title and use of the road reverts to the public, or, more accurately speaking, the road, which has been a public highway during the time tolls were collected, continues to be a public highway disburdened of tolls." 38 *Cyc.* 391.

The title, therefore, which the turnpike company had within the present corporate limits of Laurel, is now in the Mayor and City Council of Laurel, with all the obligations which the incorporation of that municipality imposes with respect to public roads and streets.

The appellants contend that the ordinances of the Mayor and City Council granting the State Roads Commission the right to improve Washington Avenue to the width of fifty feet is *ultra vires;* but that contention is immaterial, as they have no right to encroach on a public road, control of which may be in either appellee or both.

It has been definitely decided in this state in the case of *Ulman v. Charles St. Avenue Company,* 83 Md. 130, 144, 34 A. 366, 369, that an abutting owner cannot, by encroaching on a public road, acquire title adverse to the public rights therein. "The well-established rule of the common law is, however, that 'the common right of way' cannot be lost by the attempted adverse possession of a private individual, and it seems to us that it is such a rule as can be legitimately changed by legislation only, and not by judicial decisions." See *Dillon on Municipal Corporations* (5th Ed.), sec. 1193. In the case of *Baldwin v. Trimble,* 85 Md. 396, 37 A. 176, 178, 36 L. R. A. 489, where it was held that there could be and was "an actual and notorious abandonment of the highway by the public" (*Libertini v. Schroeder,* 149 Md. 484, 495, 496, 132 A. 64), Judge McSherry, who wrote the opinion, on the authority of *P., W. & B. R. R. v. State,* 20 Md. 157; *N. C. Ry. v. Baltimore,* 21 Md. 93, and the *Ulman Case, supra,* said: "An encroachment on a highway is conclusively settled in Maryland to be a public nuisance, which can never grow by prescription into a private right." Compare *Mullan v. Hochman,* 157 Md. 213, 145 A. 554.

The allegations of the cross-bill are sufficient to show that there is a public road of not less than fifty feet in width, running north and south through Laurel, on which the appellants have encroached, and with the improvement of which they have interfered, and, this being true, as the demurrer admits, the cross-plaintiffs are entitled to relief, and the demurrer was properly overruled.

5.   At the hearing of the motion for a preliminary injunction, there was evidence of the laying out of a sixty foot roadway under the Acts of 1812, ch. 78, now Washington Avenue, the use of it continuously for as long a time as any witness, one of them over eighty years of age, could remember, work on it by the Town of Laurel from 1875 to 1908, the macadamizing of fourteen feet, then the addition of three foot shoulders to the macadam, the survey and plat made by the authority of the Mayor and City Council of Laurel, the acceptance of the plat showing a fifty foot street, the testimony of the engineer who made the survey and plat that the street as surveyed and platted by him was clear of any encroachments or buildings and that it was made fifty feet wide so as not to interfere with the buildings then on Washington Avenue.

The first conveyance to Anna A. Seiling (Plaintiff's Exhibit No. 1), an assignment of a lease dated September 10, 1918, calls to begin "at the northwest corner of the Baltimore and Washington Turnpike, now called Washington Avenue, with Main Street at a stone there planted," and the given line is described as "binding on said Turnpike or Avenue." The second exhibit is the conveyance of the fee. This is the lot on which the hotel is located. The garage lot, conveyed to Anna A. Sieling by deed dated March 10, 1920, begins "at a point on the east side of Washington Avenue" and runs thence "southerly with the westerly side of Washington Avenue." There are the bounds of her pretensions and is some evidence of dedication by her predecessors in title. *White v. Flannigain,* 1 Md. 525, 540; *McCormick v. Baltimore,* 45 Md. 512, 523, 524; *Harbor Company v. Smith,* 85 Md. 537, 541, 37 A. 27.

The appellants contend that the only road authorized and

laid out is an eighteen-foot driveway, and that this is the true meaning of the Act of 1812. It is true that the eleventh section does not direct the commissioners in terms to lay out a road sixty feet in width, nor does their certificate say anything of its width, but the section directs them "to return a true and correct plot, specifying the courses and bounds thereof," but section thirteen directs the "president, managers and company" to lay out a road sixty feet in width, of which at least eighteen feet shall be of artificial construction, and, reading the act as a whole, it contemplated a sixty-foot road, which is not narrowed by the requirement that at least eighteen feet shall "be made an artificial road." By section 11 it was provided that the road "so laid out and returned as aforesaid and made, shall be forever thereafter taken, held and adjudged a public road and common highway." It makes no difference whether the road was to be laid out by the commissioners or the corporation (38 Cyc. 373); it was required to be laid out to the full width of sixty feet, and we cannot assume at this late day that the duty which was imposed by statute on pain of forfeiture of the charter was not performed. In the case of *Baltimore & Frederick Turnpike Co. v. Hebb,* 88 Md. 132, 136, 40 A. 879, 880, which was a suit for damages for accident due to the dangerous condition of the turnpike outside the traveled way, this court said: "The defendant was incorporated by Act of 1804, c. 51. The seventeenth section of this act requires it to keep the turnpike open to the width of sixty-six feet, and it was its duty to maintain the whole of this space in a safe condition for travel. *Baltimore & Yorktown Road v. Crowther,* 63 Md. 558, 1 A. 279; *Baltimore & Liberty T. Co. v. Cassell,* 66 Md. 419, 7 A. 805, 59 Am. Rep. 175. This duty is not discharged by leaving open a space sufficient for 'customary travel.'" In that charter the company was required to construct an artificial road not less than twenty feet in width. "The taking of toll from travelers as compensation for the use of the road creates an obligation to maintain every part of said road in a safe condition." *B. & L. T. Co. v. Cassell,* 66 Md. 419, 430, 7 A. 805, 806. That a turnpike company

does not surrender any part of the highway or be relieved of any of its duties to the traveling public by its failure to improve it to its full width is clearly set forth in the opinion by Judge Miller in *Baltimore & Yorktown Turnpike Co. v. Crowther,* 63 Md. 558, 1 A. 279. "The control of the city over streets is attended with the duty of preserving them for their legitimate purposes, and the municipal authorities cannot divest themselves of this trust." *Carroll County v. Rickell,* 146 Md. 463, 469, 126 A. 711, 714. This point was expressly raised and so decided in *Ulman's Case,* 83 Md. 130, 34 A. 366, 369, where, quoting with approval *Tainter v. Mayor of Morristown,* 19 N. J. Eq. 46, 59, 60, it was said: "To protect highways from encroachments that it is the business of no one to resist requires that the public be allowed to resume its rights at any distance of time, disregarding any loss to those who have appropriated and erected improvements on the public domain, or to the more innocent purchasers from them."

In this case the bill and cross-bill confine the question of title to Washington Avenue, which is laid out to a width of fifty feet, as that is the extent of the joint control of the Town of Laurel and the State Roads Commission, and, in the opinion of this court, there is sufficient evidence in the record of title in the appellees to warrant the granting of a temporary injunction to prevent any further encroachment or interference by the appellants. If on a trial of the merits of the case the court finds Washington Avenue as laid out to be a public highway, either by user or dedication as such, or because of its location within the lines of the turnpike, if its title be established, the injunction may then be granted as prayed by the cross-bill, and the encroachments removed. *Ulman's* case, *supra.*

Finding no error in the rulings on the demurrer, in the order for injunction, or in the rulings on the evidence, which we think it unnecessary to discuss, the orders appealed from will be affirmed.

*Orders affirmed, with costs, and case remanded.*