CARROLL E. DIVEN, Executor, et al. *v.* ANNA A. SIELING.

[No. 38, January Term, 1933.]

*Decided April 6th, 1933.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*George W. Sutton* and *David Ash,* for the appellants.

*J. Royall Tippett,* for the appellee.

Digges, J., delivered the opinion of the Court.

We are asked in this appeal to reverse the decree of the chancellor by which the appellants' bill of complaint was dismissed. After carefully considering the rather voluminous testimony, our conclusion is in full accord with the chancellor's decree, and the same must be affirmed. There were a number of exceptions reserved to rulings on evidence by the respective parties. At the close of the whole testimony the chancellor reviewed the testimony admitted subject to exception, as well as all other rulings, which review resulted in practically all of the rulings being against the appellee and in favor of the appellants; the evidence remaining after such action compelling the passage of the decree appealed from. The only theory upon which the relief prayed for by the appellants can be based is that of a resulting trust in John H. Sieling, the appellants' decedent.

The facts are that the appellee, by industry and thrift over a period of twenty years or more, accumulated a considerable amount of money; that she is the eldest of six children, and John H. Sieling was the youngest, and spoken of by the appellee as the baby; that she was devoted to her youngest brother, her affection for and interest in him resembling that of a sister and mother combined; and there is nothing in the evidence to indicate that John H. Sieling's affection for her was not of the most sincere and devoted character. He, the evidence discloses, was of an impecunious nature, and this resulted in his asking and receiving from the appellee, over a period of many years, money which in the aggregate amounted to a large sum, designated sometimes by the witnesses as "gifts" and at other times "loans." It further appears that he purchased in 1914 from the estate of his father-in-law, Mr. Diven, certain hotel prop-

erty in the town of Laurel, Prince George's County, which before his death had been operated by Mr. Diven; that at the time of the purchase John H. Sieling borrowed a considerable portion of the purchase money from the Laurel Building Association, secured by mortgages on the property; that the property consisted of a leasehold lot on the corner of the Washington-Baltimore Boulevard and Main Street, improved by a hotel, and a vacant fee simple lot adjoining; that in the year 1918, the mortgages being in default, they were foreclosed by the assignee of the mortgagee in equity proceedings for that purpose in the Circuit Court for Prince George's County; that at the foreclosure sales the appellee became the purchaser, paying in full the purchase price with her own money; that she subsequently purchased the ground rent on the hotel property, and various other parcels of real estate in the town of Laurel, the deeds to which, as well as those for the hotel property, being filed by the complainants as exhibits with the bill of complaint, all reciting that the purchase money was paid in full by the appellee, and title in fee simple taken by her, and it being proved without question or contradiction that all of this purchase money, at the time of the purchase, belonged to her absolutely and exclusively; that the appellee, after the purchase of the hotel property, permitted her brother John H. Sieling to continue to occupy and operate it, which he did with two intermissions of about a year each, and that she also permitted him, as her representative, to collect the rents from the tenants who occupied her other property in Laurel, some of which rents he turned over to her, but the majority of which he appropriated to his own use; that since the acquisition of all and every piece of this property the appellee has paid all of the taxes, insurance and repairs thereto; that she had installed in the hotel, and paid for with her own money, a hot water heating system costing $1,600; that she also purchased from her brother and his wife the personal property, consisting of furnishings, in the hotel, and paid therefor, according to her testimony, $1,800, but according to the wife of John H. Sieling, a lesser amount; that during one of the

periods when the brother left the hotel property, the appellee leased as landlord to a Mr. Heene that property and furnishings for a rental of $1,800 a year, payable in equal monthly installments, which rent she collected; that during the lifetime of John H. Sieling the appellee sold a vacant lot in Laurel, which she had acquired as above stated, to one Minnix, a resident of the District of Columbia, for $6,000. The record indicates that the negotiations for this sale were conducted by John H. Sieling, the transaction was handled by a title company, and the check for the purchase price of $6,000 was drawn to the appellee, delivered into the hands of John H. Sieling, and by him, through his wife, transmitted to the appellee.

It is further shown that John H. Sieling obtained a contract from the State Roads Commission for the building of a section of road in Montgomery County, the contract being awarded in the name of his wife, and which necessitated the filing with the commission of a contractor's bond for the completion of the work; that upon the request of John H. Sieling, and for the purpose of enabling him to make a possible profit on the contract, the appellee conveyed all of her property to William and John Stanley, trustees, for the purpose of indemnifying the United States Fidelity & Guaranty Company for any loss which it might suffer as having executed the bond for the contractor; that John H. Sieling failed to complete the contract, the expense of which completion devolved upon the appellee at an expenditure of a substantial amount; that after the completion of the contract, the trustees by deed reconveyed all the property to the appellee.

It is further shown that the State Roads Commission, in the widening of the Baltimore-Washington Boulevard, found it necessary to acquire a portion of the property conveyed as pointed out to the appellee; that John H. Sieling desired to resist this by legal proceedings, and requested his sister to join with him in that resistance, which she refused to do, but did sign a power of attorney, wherein John H. Sieling was designated her agent to represent her, with full power to act

to protect from trespass and invasion or confiscation of any part of her property without consent or agreement for full compensation. This power of attorney was evidently drawn by a lawyer, was executed and acknowledged before a notary public in Baltimore City, and contained this language: "Know all men by these presents, that I, Anna A. Sieling, of Baltimore, Maryland, nominal owner and owner of record of properties in Laurel, Maryland, now in the possession and control of my brother John H. Sieling, in which he also has a pecuniary interest and vested right." And later on, in describing the property, the following language is used: "The lot and premises occupied by Ward Brothers as storage for automobiles, and also the hotel and lot known as Laurel Hotel, now occupied by John H. Sieling and in his possession at present."

The brother did institute legal proceedings against the State Roads Commission, which culminated in the case of *Sieling v. State Roads Commission,* 160 Md. 407, 153 A. 614. It is also shown that the appellee's name was attached to the bill of complaint in that case, and while the handwriting expert, who was a paying and receiving teller of the Baltimore Trust Company, testified that the signatures to the bill of complaint and to the power of attorney were in the same handwriting, the appellee positively denies ever having signed the bill of complaint. She admits having signed and executed the power of attorney, but says that, having complete confidence in her brother, and he having visited her in regard to it several times before he brought the paper to be executed, she did not examine it critically, and did not understand that the language used was in any way an admission on her part that her brother had any interest whatever in the property at Laurel.

The appellee has lived for some years in Baltimore, and at present and for some time past has owned and conducted a sanitarium located in that city. Previous to that time she was in charge of Newport Hospital at Newport News, and Franklin Square Hospital in Baltimore City, which last

hospital she left when in 1910 she purchased the property where she now conducts the sanitarium.

There is contained in the record testimony by Rose A. Sieling, the widow of John H. Sieling, and one of the appellants, as also that of George W. Sutton, that at the time of the sale of the Minnix property, in the examination of the title it was discovered that the appellee had placed a mortgage of $32,000 on all of her property, that in Baltimore as well as that in Laurel, and that when Mr. Sutton informed John H. Sieling of the existence of this mortgage, in the presence of his wife, his attitude was one of great surprise and indignation, that he could not believe it; "he violently threw off his overcoat onto a chair and rushed out to the telephone; when he came back from the telephone he sat down and seemed to be violently agitated and was crying and sobbing, and he said, 'They cannot do what they please with my property; I see I have got to kill some one' "; that he went to the telephone a second time, and "when he came back he seemed to be more composed and he seemed to be satisfied, and he said that his sister Anna told him that she would lift the $32,000 mortgage and that the $6,000 would clear him of all his indebtedness to her, and that the $6,000 referred to was from the purchase of the Minnix lot and the house on Main Street." The appellee denies ever having had any telephone conversation with her brother on that subject.

The above statement sets forth in substance the facts upon which the complainant must rely.

The law in such cases, as settled by the decisions of this court, is stated by Judge Pattison in *Vogel v. Vogel,* 157 Md. 147, 145 A. 370, 373: "That where * * * the conveyance of the legal title is taken in the name of one person, while the consideration, or a part of it, is paid by another, not in the way of a loan to the grantee, and there is no natural or moral obligation on the part of the person paying the same to provide for such grantee, as in the case of parent and child, or husband and wife, a resulting trust immediately arises from the transaction, and the person named in the conveyance will be trustee for the party from whom the con-

sideration proceeds, unless a different intention is shown. In all species of resulting trusts, intention is an essential element, although that intention is never expressed by any words of direct creation. * * * A person who undertakes to establish a resulting trust takes the burden of proof on himself (*R. C. L.* 26, p. 1229), and, as was said by Judge Burke in *Dixon v. Dixon* (123 Md. 44, 90 A. 846, Ann. Cas, 1915D, 616), *supra*: ' "Payment or advance of the purchase money by the party claiming the trust, before or at the time of the purchase, is indispensable." *Hays v. Hollis*, 8 Gill, 357; *Hollida v. Shoop*, 4 Md. 465; *Brawner v. Staup*, 21 Md. 328: "It is held in all the cases that the payment, which is the foundation of the trust, must be made out by plain, direct, and unequivocal evidence." *Keller v. Keller*, 45 Md. 269; *Thomas v. Standiford*, 49 Md. 181; *Greer v. Baughman*, 13 Md. 257. When the plaintiff relies upon mere parol evidence to establish the trust the "Court should view with the greatest caution such evidence impeaching, as it does, solemn instruments, the evidence of title to land. The "authorities," say the Court in *Dorsey v. Clarke*, 4 H. & J. 557, "are clear that the payment of the money by the *cestui que trust* must be clearly proved: otherwise you render insecure titles depending upon deeds and other written instruments." *Faringer v. Ramsay*, 2 Md. 365. Testimony of witnesses, based merely upon memory as to oral statements made by persons since deceased should be received with great caution, and if a long time has elapsed since the alleged statements, such testimony is held to be most unsatisfactory and inconclusive. In many cases the courts have spoken of the caution with which such evidence should be accepted as correct, and have stated the reasons therefor." ' In *Dixon v. Dixon*, 123 Md. 44, 90 A. 846, 851, an opinion by Judge Burke, it is said: " 'Payment or advance of the purchase money by the party claiming the trust, before or at the time of the purchase, is indispensable.' * * * 'It is held in all the cases that the payment, which is the foundation of the trust, must be made out by plain, direct, and unequivocal evidence.' * * * When the plaintiff relies upon mere parol evidence to

establish the trust, the 'court should view with the greatest caution such evidence, impeaching as it does solemn instruments, the evidence of title to land;' " and see cases therein cited. To the same effect see *Johns v. Carroll,* 107 Md. 436, 69 A. 36; *Beachey v. Heiple,* 130 Md. 683, at page 693, 101 A. 553; *Poole v. Poole,* 129 Md. 387, 99 A. 551; *Zimmermann v. Hull,* 155 Md. 230, 141 A. 531; *Moran v. O'Brien,* 156 Md. 221, 144 A. 257, 259. In the last-cited case it was said: "Usually these attacks are upon allegations of fraud, mental incapacity, duress, or undue influence; and even in such cases, to enable them to succeed, the law requires strict, certain, and positive proof. It needs no argument to show that this should be the rule, because the validity of business transactions depends in no small measure upon the stability of deeds and other solemnly executed written agreements. * * * The law applicable to such a case * * * has been often declared by this court to be that the burden of proof not only rests upon the appellee [the person setting up the trust], but she must prove her case by clear and satisfactory evidence." The rule prescribed by the decisions of this court, declaring upon whom the burden of proof rests, and the quality and character of evidence necessary to establish a resulting trust, is in accord with that applied universally by other courts. *Dixon v. Dixon,* 123 Md. 44, 90 A. 846, Ann. Cas. 1915D, 616, and note.

The facts in the present case fall far short of a compliance with the settled rule. The appellants have totally failed to prove that John H. Sieling, their decedent, ever furnished as much as one cent for the purchase of the property held by the appellee and conveyed to her in fee simple, as shown by the deeds filed as exhibits with the bill of complaint, but on the contrary it is conclusively shown that all the consideration was furnished by the appellee, and that in addition she, during the lifetime of her brother, either loaned or gave him thousands of dollars. These facts apparently are not disputed or controverted, so that the only possible theory upon which they could recover would be that, although the appellee paid all of the purchase price and took the title to the prop-

erty so purchased in her own name, she was loaning the aggregate of the amounts so used to her brother, and that the deeds to her were not absolute, but in the nature of a mortgage as security for the loans so made. The evidence entirely and positively refutes any such theory. There is not a word of testimony as to any agreement or arrangement of such nature. Assuming all of the testimony adduced by the complainants is true, and giving it the most favorable interpretation for their benefit, it shows nothing more than a possible claim of ownership by John H. Sieling, with nothing more to base that claim upon than that he perhaps negotiated for the purchase of some of the property for his sister, and thereafter attended to the renting of it, turning over to her some of the rents, and keeping a large portion thereof himself. If, during his lifetime, he had anything substantial upon which to base his claim that all of the money used for the purchase of the property was a loan to him, and, knowing that his sister was using it, by sale and mortgage, for her own benefit, it is unbelievable that he would not have attempted to set up and substantiate his claim during his lifetime. John H. Sieling, by his will, left all of his property to the appellant Rose A. Sieling, his widow, who now asserts a claim, based on evidence which we have no hesitation in declaring is, when tested by the settled law of this state, wholly insufficient to support such claim. If it be held to the contrary, no one's title to property would be secure; certainly not after the death of the real owner. The picture, as presented by this record, is that of an elder motherly sister being overgenerous to a younger brother, and apparently, because of the allegation of certain isolated facts growing out of the relationship, the representatives of the deceased brother found their claim and attempt to make the excess of generosity the basis of a recovery.

*Decree affirmed, with costs.*