COOLEY, Etc. *v.* WHITE CROSS HEALTH AND
BEAUTY AID DISCOUNT CENTERS, INC.

[No. 352, September Term, 1961.]

344

*Decided July 10, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HORNEY, MARBURY and SYBERT, JJ.

*Joseph S. Kaufman,* with whom was *William Walsh* on the brief, for the appellant.

*C. William Gilchrist* and *Gorman E. Getty* for the appellee.

MARBURY, J., delivered the opinion of the Court.

This is an appeal by William A. Cooley, trading as Cooley's Pharmacy, complainant below and appellant here, from an order of the Circuit Court for Allegany County sustaining a demurrer to a bill of complaint without leave to amend, and dismissing it. The bill sought to temporarily and permanently enjoin White Cross Health and Beauty Aid Discount Centers, Inc., defendant below and appellee here, from certain advertising, contributing or offering to contribute a

certain percentage of the total amount shown on its sales tape receipts to churches or other charitable organizations designated by the customer where any part of the total amount shown on these receipts represents the price or prices received for products on which a minimum retail resale price has been established by manufacturers or producers according to contracts entered into pursuant to the Maryland Fair Trade Law, Code (1957), Article 83, §§ 102-110, and from making any rebates, refunds, discounts or other concessions of any kind or character for the purpose of, or which will result in, decreasing the said minimum retail resale price.

The facts, well pleaded in the bill of complaint, are, of course, admitted to be true by the demurrer. The bill alleged that the appellant has been the owner and operator of a retail pharmacy in Cumberland, Allegany County, Maryland, for several years; that White Cross is a corporation authorized to do business in Maryland, is engaged in the retail toiletries, drug and cosmetic business, and also has a place of business in Cumberland. That Cooley engages in the business of selling various toiletries, drug, cosmetic articles and products which are identified by trademarks, brands and names owned by respective manufacturers of said products, which are sold in free, fair and open competition with comparable products of other manufacturers and are also sold or offered for sale by the appellee.

The bill further states that following the enactment of the Fair Trade Law, various producers and manufacturers of toiletries, drug and cosmetic articles, in order to protect their trademarks and perpetuate the good will of their products, and to protect the public generally from injuries arising from unfair practices in the distribution and sale of the manufacturers' products, have established minimum retail sales prices for their products within the State. That they have executed written contracts with retail dealers in Maryland with respect to such articles, and that Cooley is a party to at least one of these contracts.

The bill further alleges that the various retail drug and other retail stores in the county have abided by and maintained the minimum retail selling prices established by these

various contracts with manufacturers, and that both the manufacturers and retailers have been diligent in seeing that these prices have been conformed to by all retailers in that area.

The bill also states that within ten days prior to the filing of the bill of complaint, the appellee advertised, offered for sale and sold certain drug products at less than the price stipulated in the manufacturers' contracts and, as a result, the appellee was notified that this conduct violated the Maryland Fair Trade Law.' Under the threat of litigation, the appellee then agreed to cease selling such products at less than the fair trade price, but contemporaneously caused an advertisement to be placed in the Cumberland Sunday Times of Sunday, December 17, 1961, which is the basis for this suit. The published advertisement, filed as an exhibit with the bill, was prefaced with the statement:

> "BECAUSE OF THE *'UNFAIR'* FAIR TRADE LAWS of the State of Maryland, the citizens of the Cumberland community are being compelled to pay to the local retailers prices carrying as high as 100% markups on their purchases of Health and Beauty aids. * * *"

The advertisement further states:

> "Local druggists have threatened our company with an injunction which would forbid us from offering these savings to you, the public. Under this threat, which might permanently prevent us from ever again offering these savings, we are raising prices of items which are covered by this 'UNFAIR' Fair Trade Law. * * *"

It concludes:

> "Until such time as we can legally give you these savings directly, White Cross announces its:
> CUMBERLAND COMMUNITY GOOD WILL PROGRAM!"

The program, as outlined in the advertisement, states that certain churches and other charitable organizations which col-

lect White Cross register tapes from their members will receive a check, upon surrender of the tapes, equal to 25% of the value of these tapes, excluding all federal and state taxes.

Finally the bill averred that the advertisement and offer constitutes the offering or making of a concession in connection with the sale of products subject to the resale price restrictions established pursuant to the Maryland Fair Trade Law and is, therefore, a violation of this law.

The chancellor in sustaining the demurrer found that the offer to make a contribution representing 25% of the value of sales tape receipts to certain charitable organizations did not constitute a *direct* concession or benefit to the buyer, therefore was not a violation of the Fair Trade Law.

In the lower court the appellee in its demurrer raised certain preliminary procedural questions. It claimed that the bill did not allege any violation of any specific manufacturer's contract whose minimum retail sale price had been established, or the price at which any specific article had been sold for less than the fair trade contract price, and also that under Maryland Rule 170 b 2 injunctive relief should not be granted unless there shall have been filed with the bill exhibits to show the character and extent of the plaintiff's interest in the action.

These questions were resolved by the chancellor contrary to the contentions of the appellee when he held that the bill of complaint was in proper form, holding that the demurrer admitted that White Cross was offering for sale fair traded items not in accordance with their minimum resale selling prices as set by the manufacturer and that it was called to the appellee's attention that it had been violating the Maryland law in this respect, when it then complied with those prices; and that Rule 170 b 2 did not apply in this case because under Section 107 [1] any retailer who complies with the

---

1. Code (1957), Article 83, § 107. Advertising or selling at less than contract price is unfair competition.

Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of §§ 102-110, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.

Fair Trade Law, even though a non-signer of any agreement with any manufacturer, may maintain an action for its violation who has been damaged thereby, citing *Gadol v. Dart Drug Corp.*, 222 Md. 372, 161 A. 2d 122. We agree with the chancellor's ruling on these procedural aspects of the case, and for the further reason that the appellant's cause of action was derived from the statute itself and did not require the filing of fair trade contracts as exhibits or the allegation of specific fair traded items sold at less than minimum prices. Exhibits required by Rule 170 b 2 to be filed before an injunction may issue need not be filed with the bill. *Haldas v. Commissioners of Charlestown*, 207 Md. 255, 113 A. 2d 886.

This brings us to the principal question in this case which is, does the offering or making of contributions to charity of a percentage of the sales receipts of the appellee constitute a concession in connection with the sale of fair traded products in violation of Section 104 of the Maryland Fair Trade Law, which provides:

"§ 104. Actions violating retail price restrictions.

"For the purpose of preventing evasion of the resale price restrictions imposed in respect of any commodity by any contract entered into pursuant to the provisions of §§ 102-110, (except to the extent authorized by the said contract):

(a) The offering or giving of any article of value in connection with the sale of such commodity;

(b) The offering or the making of any concession of any kind whatsoever (whether by the giving of coupons or otherwise) in connection with any such sale; or

(c) The sale or offering for sale of such commodity in combination with any other commodity, shall be deemed a violation of such resale price restriction, for which the remedies prescribed by § 107 of this subtitle shall be available."

This is a case of first impression in Maryland construing Sections 104 and 107 as applied to the meaning of "concession" in the Maryland Fair Trade Law, although in the case

of *Dart Drug Corp. v. Eli Lilly & Co.,* 216 Md. 20, 139 A. 2d 272, which involved an analogous subject, trading stamps, the parties had conceded that the giving of trading stamps was a violation of fair trade contracts.

While a number of states have or have had fair trade laws, no court of last resort seems to have passed on this point. Annot. 22 A.L.R. 2d 1212, 70 A.L.R. 2d 1080. These annotations deal with the question as to whether the giving of trading stamps or other premiums is a violation of the fair trade laws. California, the first state to enact such a law, Delaware and Pennsylvania have ruled that this is permissible, but New York, New Jersey and Massachusetts have ruled to the contrary. The Wisconsin fair trade law bans the giving of any ticket or coupon having a redemption value. The Oregon and Connecticut laws have certain sections similar to Section 104. In these states it is illegal to give trading stamps in connection with the sale of fair traded items. As to trading stamps in general see 66 Yale L. J. 436, 9 Stan. L. Rev. 391, and 27 Fordham L. Rev. 68.

The instant case differs from all except one of the cases mentioned in the annotations, in that there is no direct gift or concession to the buyer in the form of additional merchandise, coupons or tapes redeemable in merchandise, but only the privilege is given the buyer to designate a gift to a charity or some other worthy cause. The one exception is the case of *Sunbeam Corp. v. Phillips,* C. C. H. Trade Reg. Rep. para. 62686, relied on by the chancellor and the appellee. This California lower court case ruled that an offer by the defendant to contribute 15% of the purchase price "to your church or favorite charity" was not a violation of the California Fair Trade Act. We think this decision is neither controlling nor persuasive since the California Act (Business and Professions Code, §§ 16900-16905) has no provisions similar to the provisions of Section 104, and the California courts, in construing their statute, have stated that the giving of trading stamps redeemable in cash or merchandise does not constitute a violation of the Fair Trade Act of California. *Weco Products Co. v. Mid-City Cut-Rate Drug Stores,* 131 P. 2d 856.

The purpose of Section 104 is to prevent evasion of resale price restrictions and it is designed to eliminate indirect price cutting. Indirect price cutting, like direct price cutting, is unfair competition. The language is broad in order to protect against the ingenuity of those who seek to evade the price restrictions established by manufacturers pursuant to law. In discussing this matter, 1 Callman, *Unfair Competition and Trademarks* (2d ed.), § 24.2 (c) states, at page 479:

> "Every direct or indirect abatement in price which cannot be satisfactorily explained to the customer as being unconnected with the price policy of the trademark owner should be considered a violation of the Fair Trade Act. Whether such an explanation is sufficiently clear is to be decided in the light of the circumstances of the particular case."

The legislature of this State has given broad proscription to prevent unfair competitive advantage by use, either directly or indirectly, of fair traded articles in price cutting tactics. The obvious purpose of Section 104 is to prevent evasion, and subsection (b) covers this by the words: *"The offering* or the making of *any concession of any kind whatsoever * * *."* (Emphasis supplied.) The legislative policy set forth by these provisions must be followed and this Court must construe these provisions in the light of that policy in order to carry out the true intention of the law. *Germenko v. Public Service Comm.,* 226 Md. 295, 173 A. 2d 362; *Tyrie v. Baltimore County,* 215 Md. 135, 137 A. 2d 156; *McKeon v. State, Use of Conrad,* 211 Md. 437, 127 A. 2d 635. Where the statute uses the words "any concession" the burden is heavily on the party who would subject the word "any" with its uncompromising generality to an unexpressed qualification by rewriting or interpreting the statute, as did the chancellor, to read: "The offering or the making of any concession of any kind whatsoever to the buyer or for his benefit * * * in connection with any such sale." *Food Fair Stores, Inc. v. Raynor,* 220 Md. 501, 154 A. 2d 814; *Baltimore National Bank v. State Tax Comm.,* 297 U. S. 209, 212, 80 L. Ed. 586, 589.

The chancellor construed the word "concession" to mean a definite monetary benefit to the buyer and held that since the statute uses the term "concession of any kind whatsoever (whether by the giving of coupons or otherwise)" it limited the application of these words to the receipt by the purchaser of either stamps, coupons or tapes which have a definite monetary value in merchandise or otherwise upon redemption. We disagree with his construction because the advertisement offered an inducement to prospective customers to purchase merchandise, including fair traded products, for which they would receive the privilege of designating some charitable organization to be the beneficiary of a percentage of the tape receipts involving fair traded articles. This privilege was a valuable one both directly to the customer and indirectly to the charitable organization—directly to the customer who could deduct the amount of the contribution represented by 25% of the sales tape as a charitable deduction on his federal or state income tax, 26 U. S. C. A. 170; 1962 Federal Tax Regulations, § 1.170-1 (c); and Code (1957), Article 81, § 281 (1); or to be used in fulfillment of the customer's obligation or pledge to his selected charitable organization. Furthermore, in the absence of either of these monetary benefits he might simply derive a moral satisfaction for having made a contribution to charity. Whether the concession was direct or indirect it would involve price cutting of fair traded products and thus violate the Fair Trade Law.

We think Section 104 (b) is broad enough to proscribe a direct price concession to the customer at the time of the purchase, as well as an indirect concession involving a cash refund promised to be given to the customer's appointee at some future time.

Accordingly, the chancellor was in error in sustaining the demurrer, the order must be reversed, and the case remanded for further proceedings.

> *Order reversed and case remanded for further proceedings in accordance with this opinion. Costs to be paid by the appellee.*