# MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION *v.* McCAW

[No. 497, September Term, 1965.]

664

*Decided May 12, 1967.*

'The cause was argued on February 13, 1967 before HORNEY, MARBURY, OPPENHEIMER, McWILLIAMS, and FINAN, JJ.; and

reargued on March 10, 1967 before HAMMOND, C. J., and HOR-
NEY, MARBURY, OPPENHEIMER, BARNES, McWILLIAMS and
FINAN, JJ.

*Harry W. Lerch* (on both arguments), with whom was
*Thomas E. Jones* on the brief for appellant.

*Frank B. Haskell, III* (on both arguments), with whom were
*Mitchell, Clagett & Euwer* on the brief for appellee.

OPPENHEIMER, J., delivered the majority opinion of the Court.
BARNES, MARBURY, and McWILLIAMS, JJ., dissent. Dissent-
ing opinion by BARNES, J., at page 677, infra.

The question presented by this appeal is whether a subdivi-
sion plat in which land is dedicated to public use can be aban-
doned when the land is within an area designated for public
taking as a regional park, and the local law under which the
abandonment is sought provides that the plat can be abandoned
only if "no damage can be in any wise sustained by persons
other than the petitioners."

In November, 1908, a plat of subdivision entitled "East River
View Subdivision" (the subdivision) was made by one Lucas
and duly recorded in Prince George's County where the land
was located. The plat showed a number of small building lots,
with several streets, sixty feet in width. Subsequently, a portion
of the subdivision was abandoned under court order.

In May, 1963, The Maryland-National Capital Park and
Planning Commission adopted a Master Plan for the Henson
Creek Watershed, as part of the General Plan for the develop-
ment of the Maryland-Washington Regional District in Mont-
gomery and Prince George's County. The Master Plan desig-
nated a portion of the land within the subdivision as a part of
a large regional park.

A few months later, in July, 1963, the appellee purchased
a large tract of land which included all of the land in the sub-
division. On July 15, 1965, he filed a petition in the Circuit
Court for Prince George's County for leave to abandon the bal-
ance of the plat of the subdivision. The petition was brought

under the Code of Public Laws of Prince George's County, Subtitle 12 (1963) (the statute).

Section 12-26 of the statute provides for the filing and recording of plats of subdivisions in Prince George's County. Section 12-31 provides that such plats, when filed for record, shall constitute a part of the land records of the county, and shall have the same force and effect as to notice given properly recorded deeds. Section 12-32 (the abandonment provision) reads in part as follows:

> "When said plats are so recorded, those portions of said land designated on said plats as streets, roads, avenues, lanes, alleys and public parks or squares, shall be and the same are hereby declared to be forever dedicated to public use and shall not thereafter, on any pretext whatsoever, be altered or taken for private use; provided, however, that nothing herein contained shall effect [sic] the right of any person or persons owning or claiming any interest in said land derived by, from or under any persons other than the maker of said plat, or by, from or under such maker prior to such subdivision; and provided further, that the maker of any such plat or plats, his heirs or assigns, shall have the right to apply by petition to the Circuit Court for said County, for leave to abandon the subdivision of lands so made by him, and reconvert the same into one tract or parcel; * * * said Court if, convinced upon such proof, and after such notice by publication or otherwise or as it shall direct that no damage can be in any wise sustained by persons other than the petitioners, shall have power to pass an order authorizing and empowering such petitioner to abandon such subdivision, either in whole or in part * * *"

All these sections of the statute (except the provisions in the abandonment provision as to the manner in which notice is to be given) were in effect when the plat of the subdivision was filed in 1908 by the appellee's predecessor in ownership. Code of Public Local Laws of Maryland, Art. 17, ch. 619, sections 85A, F, and G (1908).

The appellee's petition for leave to abandon stated that the appellee desired to reconvert all the portions of the subdivision to which the petition pertained to one parcel or tract of land and that none of the avenues or streets the dedication of which was sought to be abandoned had ever been opened or used as such. Paragraph 6 of the petition listed "the property owners, persons and bodies corporate interested in the abandonment prayed for * * *" The public bodies listed included the County Commissioners of Prince George's County, the appellant, and the Washington Suburban Sanitary Commission. Paragraph 7 of the petition reads as follows:

"7. That the proposed abandonment does not effect any property other than that of the Petitioner and that no damage can in any way be sustained by virtue of said abandonment by any person, corporation or public bodies other than the Petitioner and those who will be personally served herein and/or will sign the consents hereto."

The abutting property owners and the County Commissioners consented to the abandonment. Washington Suburban Sanitary Commission filed a conditional consent. The appellant, Maryland-National Capital Park and Planning Commission (the Commission), without formal entry of its appearance as a party, consented, in writing, to the abandonment of that portion of the subdivision which lies outside the boundaries of the proposed park, but asked the court to disapprove the abandonment of that portion of the subdivision which lies within the duly adopted park boundaries. With its pleading, the Commission filed as an exhibit the similar recommendation of the Prince George's County Planning Board and a copy of the duly adopted Master Plan of Land Use for the Henson Creek Watershed which shows the proposed Henson Creek Regional Park.

The street area in the part of the proposed abandonment to which the Commission objects consists of about ten acres, which is a small proportion of the land dedicated to the public use in the 1908 subdivision plat and a small proportion of the remainder of the appellee's land. The land owned by the appellee containing dedicated streets in the portion of the subdivi-

sion to whose abandonment the Commission does not object, like other portions of the appellee's property purchased from the original subdivision owner, is contiguous to the proposed park. The Commission owns no land abutting that of the property here involved, but it was agreed by counsel, in oral argument, that the Commission has acquired other parcels within the area of the designated park.

A hearing was held by the court below, at which no testimony was taken. At its conclusion, on November 16, 1965, the court entered a Final Order for Abandonment, based on the pleadings, exhibits and argument of counsel. On December 16, the court granted leave to the Commission to intervene as a party for the purpose of appeal.

I

The threshold question, raised by the appellee's motion to dismiss, is whether the Commission has standing to appeal. The appellee contends that the Commission is not a party, within the requirement of Code (1957) Article 5, section 6, because it has not shown a direct interest in the subject matter of the litigation. That section of the Code provides that any party may appeal from any final decree entered by a court of equity. Under it, appeals are permitted by parties of record and also persons who were directly interested in the subject matter of the suit. See *First Union Savings & Loan v. Bottom,* 232 Md. 292, 295, 193 A. 2d 49 (1963), and cases therein cited. The test of standing here involved is broader than that involved in zoning cases, where ordinarily an appeal from a decision of the administrative agency can only be taken by an aggrieved party who not only has a specific interest or property right affected but is personally and specially affected in a way different from the effect upon the public generally. *Jahnigen v. Staley,* 245 Md. 130, 225 A. 2d 277 (1967) ; *Alvey v. Hedin,* 243 Md. 334, 339, 221 A. 2d 62 (1966) ; *Dubay v. Crane,* 240 Md. 180, 185, 213 A. 2d 487 (1965), and cases therein cited. Here, the abandonment provision of the statute emphasizes the public interest involved. The dedicated open spaces are declared to be forever dedicated to public use and are not thereafter to be altered or taken for private use "on any pretext whatsoever" unless it is

shown that no damage can be in any wise sustained by persons other than the petitioners.

Under explicit statutory provisions, the Commission is a representative of the public in matters such as are here involved. It is empowered to make general plans for the physical development of the District and in doing so, is expressly made the representative of the State. Code of Public Local Laws of Prince George's County, sections 59-68, 59-69 (1963). It is given the power of condemnation and lands acquired by it are held for the benefit of citizens of the State and especially for the benefit of citizens of Montgomery and Prince George's Counties. Sections 59-31, 59-37. Under section 59-75, no plat of any subdivision of land shall be admitted to the land records of either county without the Commission's approval, and the Commission has the power to require dedications of streets and roads in such subdivisions.

The vital role played by planning bodies such as the Commission in the protection of the interest of the public was recognized in *Krieger v. Planning Comm'n of Howard County*, 224 Md. 320, 167 A. 2d 885 (1961). That case upheld the authority of the Planning Commission to deny approval of a subdivision plan submitted to it by a developer. The Commission had duly adopted a major street plan and subdivision regulations with which the proposed plan did not comply. Judge Henderson, for the Court, said: "If the Planning Commission were powerless to require compliance, the whole purpose of planning and zoning, which looks to the future, would be frustrated." 224 Md. at 323.

*Karr v. Shirk*, 142 Md. 118, 120 Atl. 248 (1923), relied upon by the appellee, held only that attorneys appointed to represent a trustee in a sale of mortgaged premises had no standing to appeal from an order in the foreclosure proceedings disallowing their fee. The predecessor of Article 5, section 6, then in effect, allowed an appeal from a final equity order by one or more of the persons "parties to the suit." The Court held that the attorney-appellants' services were to the trustee, so that their claim for compensation was against him and not the fund. Judge Offutt, for the Court, said, however, that the word "parties" was not to be given a narrow or technical construc-

tion, and that the right of appeal was not to be denied to "persons who, while not technical parties to the record, are directly interested in the subject matter of the suit * * *" 142 Md. at 121. The appellants, it was held, fell in neither category. *In re Buckler Trusts,* 144 Md. 424, 125 Atl. 177 (1924), is no more apposite. There, it was held that a tenant of property for which the appointment of successor trustees was prayed under a deed of trust had no standing to appeal from a decree appointing successor trustees. The appellant was not a party and, the Court held, had no interest in the subject matter of the suit; there was nothing in the order appealed from, the opinion noted, precluding the appellant from enforcing whatever rights it had in respect of the property.

The appellee contends further that the Commission was not a formal party to the abandonment proceedings before the order of the lower court permitting the Commission to intervene as a party for the purpose of appeal, which order was passed after the order for abandonment. The argument ignores both the substance of the proceedings and the appellee's own position therein. In his petition for abandonment, the appellee listed the Commission as one of the bodies corporate interested in the proposed abandonment. Pursuant to the prayer of the petitioner, the show cause order was duly served upon representatives of the Commission. The Commission filed its partial approval and partial disapproval of the proposed abandonment in the proceedings and, through counsel, presented its arguments to the court before the passage of the Order for Abandonment. For all essential purposes, the Commission had been made a party to the proceedings by the appellee, and acted as a party. "Where there is compliance with the substance of the requirements of statutes or rules and the other parties have not been prejudiced, technical irregularities cannot be made the basis for depriving persons of the opportunity to assert their legal rights." *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 61, 225 A. 2d 294 (1966), and cases therein cited. A party, on appeal, may not object to an alleged improper joinder of a party when the joinder was made by the complaining party in his original action. *Sieling v. State Roads Comm'n,* 160 Md. 407, 414-15, 153 Atl. 614 (1931). Under the circumstances,

the order of the court below in granting the Commission leave to intervene may well have been superfluous. In any case, however, we hold that the Commission has a direct interest in the subject matter of the litigation and has standing to appeal.

## II

The order of the lower court granting the abandonment for which the appellee prayed necessarily rested on the legal conclusion that no damage can be in any wise sustained by persons other than the petitioner by reason of the abandonment. The power of the court to pass the order, by the express provision of the abandonment provision, depended upon the correctness of that legal finding. In reviewing that conclusion, we deal, not with a common-law dedication and abandonment, but with the application of the explicit terms of the statute involved.

The statute was before the Court in *Whittington v. Good Shepherd Evangelical Lutheran Church,* 236 Md. 185, 202 A. 2d 751 (1964). *Whittington* involved an attempted abandonment of an alleged street which had been shown on a subdivision plat duly approved by the Commission and recorded in Prince George's County. One of the questions involved was whether, under what is now section 12-32 (then section 308), the dedication became effective, without more, when the plat was recorded. The Court said:

> "Section 308 clearly sets out that upon the recording of a plat the area designated in said plats as streets, roads, avenues, lanes, alleys and public parks shall be and the same are hereby declared to be forever dedicated to public use, meaning that upon approval of a subdivision plat for recording by the appropriate public officials such approval and subsequent recording of the plat constitutes a dedication and acceptance of the areas on the plat shown as streets, roads, avenues, etc." 236 Md. at 192.

In answer to the appellants' argument that a dedication even under statute is in the nature of a gift, and the intention to give and acceptance of the gift must be clearly shown, the Court said:

> "We are unable to agree with this construction of the statute. Section 308, as repealed and reenacted by Ch. 693, Laws of Maryland (1957), states in unequivocal language that when a plat is recorded in compliance with those sections relating to recordation of plats, these portions of the land designated thereon as streets, roads, avenues, etc., shall be and the same are forever dedicated to public use and shall not thereafter be altered or taken for private use." 236 Md. at 193.

The Court said further:

> "We hold, therefore, that there was a statutory dedication and acceptance of the area in question known as 82nd Place at the time of the recordation of the plat." 236 Md. at 194.

In *Whittington,* the lower court denied the petition to abandon, and, on appeal, that order was affirmed. The portion of the street there sought to be abandoned had not been paved, but the area involved had been used by the members of the appellee church as a way of access to the church property. *Whittington,* therefore, establishes the rule, which we affirm, that under the statute, the dedication to the public is complete and the interest of the public has vested when the subdivision plat is filed.[1] However, that case did not involve the question of

---

1. In Pope v. Clark, 122 Md. 1, 89 Atl. 387 (1913), the appellant, Pope, had purchased two lots in the subdivision of Otterbourne in Montgomery County. A plat of the subdivision had been duly recorded by the owner of the subdivision under a provision of the Montgomery County Public Local Laws similar to Section 12-32 of the statute before us in the present case. Pope improved his lots and filed a bill for an injunction against the appellees who were the owners of all the other lots in the subdivision. The appellees had installed a sewer system in the subdivision, at their expense, below the surface of streets shown as dedicated in the recorded subdivision plat. The sewers were not laid in the half of the streets upon which Pope's lots directly abutted, and none of the sewers was laid within the line of his deeds. The Circuit Court for Montgomery County sustained the appellees' demurrer and dismissed the bill, on the ground that the bill did not show there was such impending damage to Pope's property rights as to authorize the

whether there can be damage which prevents abandonment under a situation such as is here presented.

The possible damage here involved is not to any member of the public by reason of his use of the dedicated street, but is damage to the members of the public of the two-county District in their collective position as taxpayers. The first question presented, therefore, is whether the damage referred to in the abandonment provision pertains to taxpayers as such.

In Maryland, taxpayers have standing to bring suit to challenge the validity of a statute when the statute as applied increases their taxes. *Murray v. Comptroller*, 241 Md. 383, 391, 216 A. 2d 897, *cert. denied*, 17 L. Ed. 2d 55 (1966) ; *McKaig v. Mayor and City Council of Cumberland*, 208 Md. 95, 102-03, 116 A. 2d 384 (1955), and cases therein cited. The same principle which gives taxpayers the right to invoke the aid of

---

granting of the relief prayed. This Court affirmed the order on the ground stated by the court below. It was said in the opinion that the mere recording of the plat did not make the streets public highw⌐ys and that the record did not show any acceptance of the streets by the county. The decision rested on the ground that Pope had shown no impending damage, and we regard the statement as to the necessity of acceptance as only dictum. Pope v. Clark was not referred to in the Whittington case. To the extent that the statement in Pope may be regarded as in any way inconsistent with the holding in Whittington, that statement was impliedly overruled by the later decision. The cases relied on for the statement in Pope dealt with common-law dedication, whereas, as Whittington makes clear, the dedication effected by the filing of the plat was under the express provisions of the statute.

Moreover, in the present case, the appellee did not contend in his pleading that the dedication of the streets effected by the filing of the plat was ineffective. On the contrary, he filed suit for abandonment under the same provision of the statute as provides that the dedication to the public is complete upon the filing of the plat, and, in his petition, asked leave of the court to abandon the streets as well as the other portions of the subdivision plat. In the brief on appeal, the appellee concedes that subsequent to condemnation, the Commission would have to abandon the streets of record in order to use the property as a park. If the dedication had not become effective upon filing of the plat, no such abandonment would be necessary.

a court to construe the statutory enactment which they attack as unconstitutional or otherwise invalid is applicable to the situation in the present case. It is immaterial that, in this case, the alleged damage would be brought about by the action of a private party through his proposed abandonment of dedicated streets, rather than through the public enforcement of legislation. The streets were dedicated to the public, and if the public affected may have to pay increased taxes because of the abandonment, the abandonment must be disapproved.

The Commission contends that if the portions of the subdivision dedicated to public use were permitted to be taken by the appellee for private use, the Commission and the taxpayers of the Maryland-Washington Metropolitan District will sustain damage when the land is acquired for public use by the Commission for the proposed regional park.[2] The appellee argues that the word "damage" as used in the abandonment provision means actual or direct damage and that there is no such damage in this case.

The wording of the statute clearly evidences the legislative intent. Abandonment can only be ordered if *"no damage can be in any wise* sustained" (emphasis supplied). The test is not whether damage will be sustained, but whether it can be. That it is the possibility of damage which prevents the approval of a petition for abandonment is emphasized by the addition of the phrase "in any wise." Under the strict, unequivocal test of the abandonment provision, if the abandonment could increase the amount which the Commission might have to pay for the land in which the dedicated streets are located, the taxpayers of the District would be damaged and the proposed abandonment must be disapproved.

When a parcel of land is dedicated as a street or for other public use, the owner of the land retains his fee simple interest, subject to an easement for the public. See *Perellis v. Mayor and City Council of Baltimore,* 190 Md. 86, 57 A. 2d 341 (1948) ; *Slear v. Jankiewicz,* 189 Md. 18, 26, 54 A. 2d 137

---

2. In the oral argument, it was stated, without contradiction, that after the order appealed from condemnation proceedings for the land involved had been instituted by the Commission.

(1947), *cert. denied*, 333 U. S. 827 (1948), and cases therein cited. See also 50 Opinions of Attorney General 94 (1965). Here, the public easement effected by the recording of the subdivision plat is for the public use of streets. Section 12-32 conjoins land dedicated by such plats for streets and roads with land similarly dedicated for public parks or squares. However, we assume, arguendo, that the dedicated portions of the land here involved can only be used for streets. The streets have never been paved or opened, and the land on which they are located is to be acquired and used for a public park, so that any future use of the streets, as such, is at best conjectural. Nevertheless, the existence of the easements cannot be ignored.

One test of whether the public might be injured through the proposed abandonment is whether, in the subsequent condemnation proceedings, the Commission would be entitled to an instruction that in assessing the damages for the taking of the portion of the appellee's land on which the dedicated streets are located, the jury may consider in their evaluation the fact that the public easement exists. Such an instruction, in our opinion, would be proper. See *Moale v. Mayor and City Council of Baltimore*, 5 Md. 314, 322-23 (1854). The instruction could properly include a reference to the fact that the streets had never been paved or used, but this factor goes to the value of the easement, not to its existence. Under such an instruction, the jury in its inquisition, might consider the easement to be of little if any value, but we cannot say that no value would be given it. The possibility, at least, exists that without the abandonment the amount of the inquisition would be less than if the abandonment had been previously effected. If the abandonment is granted, therefore, the amount of the inquisition may be higher, resulting in a greater burden on the taxpayers. That possibility, under the strict provision of the statute, is sufficient to prohibit the approval of the abandonment.

The original owner of the subdivision dedicated the streets for public use as a proper step for the enhancement of the value of his property. The appellee acquired the land a few months after the adoption of the Master Plan, which designates the proposed park. The creation of the park may well enhance the value of the appellee's remaining land,[3] and the abandonment

which he asks, to which the Commission objects, may be an advisable step, from his point of view, in the development of the portion of his property which will not be condemned. These considerations are immaterial. It is to the protection of the public interest acquired by the original dedication to which the legslative enactment looks, and when, as here, it cannot be said that the proposed abandonment cannot damage that interest, through the payment of increased money for the acquisition of the land for the park, the abandonment cannot be approved.

> *Motion to dismiss appeal denied;*
> *judgment reversed; costs to be*
> *paid by appellee.*

BARNES, J., dissenting:

I dissent in this case for three reasons: (1) the Maryland-National Capital Park and Planning Commission has no standing to appeal in this cause; (2) the Commission has suffered no "damage" within the meaning of Section 12-32, as properly construed; and (3) in any event, it is error to hold *as a matter of law* that the Commission may be damaged by the proposed abandonment.

(1)

The majority opinion indicates that the Planning Commission has standing to be or to have become a party to the abandonment proceeding as "representing the taxpayers" of the County. To me this is a curious theory which is not only unsound, but is fraught with grave dangers if pursued to its logical conclusion. In my opinion, neither the taxpayers as a general class nor the Planning Commission as their "representative" have standing to object to the proposed abandonment.

Taxpayers in Maryland represent themselves and have standing to sue if public officials act unconstitutionally or illegally *and* by such action, increase the taxes of the taxpayer. No tax-

---

3. In condemnation proceedings, the general rule is that the jury should not consider either increase or diminution in value because of the public project for which the condemned property is acquired. Big Pool Holstein Farms, Inc. v. State Roads Comm'n, 245 Md. 108, 117, 225 A. 2d 283, 288 (1967), and authorities therein cited.

payer has protested the abandonment proceeding in this case, has asked leave to intervene or has been made a party. Even a taxpayer, as a party, would have to show *by proof* that *in fact* the tax rate would likely be increased by the proposed unconstitutional or illegal action, not merely that an increase *might possibly* result if the taxpayer were unsuccessful in the litigation. *Citizens Committee of Anne Arundel County, Inc. v. County Commissioners of Anne Arundel County*, 233 Md. 398, 404, 197 A. 2d 108 (1964) and cases therein cited. Indeed, it seems clear that taxpayers in order to have standing to sue must allege and prove a special interest in the subject matter distinct from that of the general public. *Citizens Committee of Anne Arundel County, Inc. v. County Commissioners of Anne Arundel County, supra.* The position of the Planning Commission is that if it can block the abandonment of the land dedicated for streets, it *might* not have to pay as much for the owner's property if and when it condemns that property for park purposes. I have never understood that taxpayers have standing to litigate alleged savings of public expenditures which might possibly be spent in the future.

In the present case, there is no showing that taxpayers *could* suffer any special damage resulting from an increase in the Prince George's County tax rate. County funds for the Planning Commission are derived from a maximum levy of apparently 12 cents on each $100 of assessed value of property. Section 59-56(c) and (d), Prince George's County Code (1963). There is no showing that this maximum tax rate has not already been levied. Under the applicable law, there could be no *additional* tax payable by any County taxpayer if the maximum rate has been reached, regardless of the result in the present case.

If the theory is that the Planning Commission "represents" the taxpayers as "suppliers" of public funds, endless vistas of litigation arise. The Planning Commission obtains funds from the federal government, pursuant to agreements between the National Capital Planning Commission and the Planning Commission. See Sections 59-28, 59-49, 59-50, 59-53, Prince George's County Code (1963) ; The District of Columbia Park and Play-

ground Act ('The "Capper-Cramton Act"), 66 Stat. 790 (1952), 40 U.S.C. §§ 71-74 (1964).

Does this mean that the federal government or every federal taxpayer would have standing to become a party to a Prince George's County abandonment proceeding under the Maryland Act? It would appear to follow that they would have such standing if the "taxpayer" theory of the majority is carried to its logical extreme.

We may avoid these difficulties by simply observing that the Planning Commission does not represent any taxpayer, that taxpayers represent themselves in appropriate cases (of which this is not one), and that there has been no proof of any special damage to taxpayers.

In addition, the conclusion that taxpayers or their public representatives lack standing to sue is supported by the abandonment statute itself. In my opinion, the statute in question should be construed to bar taxpayers, as a general class, from objecting to the proposed abandonment.

That taxpayers are outside the class protected by Section 12-32 is shown by an analysis of the purpose of the Act of 1908 and its subsequent amendment. The purpose of the 1908 Act, of course, was to assure that certain third persons were in no way harmed by the vacation of the facilities originally dedicated to public use. The Act, in its original form, provided for notice "by publication or otherwise or as [the Circuit Court] shall direct" to persons who could suffer damage from the proposed abandonment. Apparently, this notice requirement did not adequately describe the class desired to be protected under the statute, for by the Acts of 1957, ch. 693, the notice provision was clarified by amendment. The title to this Act is instructive. It is as follows:

> "An Act to repeal and reenact with amendments, Section 308 of Article 17 of the Public Local Laws of Prince George's County (1953 Edition) [now Section 12-32], * * * relating generally to the abandonment of subdivision plats and public areas in Prince George's County and prescribing certain *procedural requirements as to notice being given to persons affected by the said abandonment.*" (Emphasis supplied.)

The 1957 Act made clear that the "persons affected" were the "Owner or owners of all property adjoining or abutting streets * * * sought to be abandoned in said petition * * *." They are the persons "aggrieved", as it were, and in my opinion, our decisions in zoning cases requiring the allegation and proof of "aggrievement" or special damage have some analogy. It is true that the unusual provisions of a zoning ordinance confine those who may object to persons "aggrieved" by the action of the zoning board, but the word "aggrieved" is a broader term than the words applicable in the present case, and the determination of who is "aggrieved" depends upon the facts in each case. Under the Act, the class to be protected is now specifically defined.

It seems to me that a sensible construction of the statute and its amendment demands that the public in general should not be included in the class of "persons" who may be damaged by the proposed abandonment. The sweeping scope attributed to Section 12-32 by the majority, I believe is unwarranted and is not consistent with the evident purpose of the statute. We should construe the Act reasonably and in accordance with the legislative purpose, *Cooley v. White Cross Health and Beauty Aid Discount Centers,* 229 Md. 343, 350, 183 A. 2d 381 (1962), and cases therein cited; and to avoid an unreasonable or oppressive result. See *Kolb v. Burkhart,* 148 Md. 539, 129 Atl. 670 (1925); *Height v. State,* 225 Md. 251, 170 A. 2d 212 (1961).

(2)

I do not believe, under the facts of this case, that either the public or the Planning Commission may, in any way, be damaged by the proposed abandonment.

First, it is certain that the filing of the subdivision plat in 1908 by McCaw's predecessor in title secured no rights to the public at large, even though the plat was filed under the Act of 1908, ch. 619, (the Act) which contained a provision substantially identical to the present Section 12-32. To understand the legislative intent in the passage of the Act brief consideration must be given to the principles of common law dedication, since it is against this legal setting that the Act should be construed.

Under the common law, an owner of the fee in land could manifest, by an unequivocal act, an intent to dedicate the land for a present or future public purpose. When that offer of dedication was either expressly or impliedly accepted on behalf of the public, the dedication for the particular public use was complete. Prior to such acceptance, the municipality is not liable for failure to keep the road in repair. *Cox v. Board of County Commissioners of Anne Arundel County,* 181 Md. 428, 431-32, 31 A. 2d 179 (1943). As Judge Marbury stated for the Court:

> "It is equally well settled that the highway for which the municipality becomes liable on account of its failure to keep it in repair must be one that has been created or accepted by the public authorities, and that the liability does not extend to a highway not accepted, but which has merely been dedicated to public use by a private owner, or one which such owner has permitted the public to use. It must actually have been accepted by the public authorities either expressly or impliedly."

The dedicator may impose conditions and restrictions in his offer to dedicate, and when the offer is accepted by the donee, the dedication is limited by those conditions and restrictions. *Armiger v. Lewin,* 216 Md. 470, 477, 141 A. 2d 151 (1958). When the owner of land makes and records a plat in which streets are laid out and thereafter sells lots as bounding on those streets, an intention to dedicate the area in the roadbeds for public use will be presumed in the absence of contrary language. The public authorities, however, must still accept the presumed offer of dedication before the dedication is complete. *Hackerman v. Mayor & C. C. of Baltimore,* 212 Md. 618, 130 A. 2d 732 (1957). Taxation by the municipality of an entire tract, including areas therein which have been offered as dedications of streets, is evidence that there has been no acceptance of the offer of dedication by the municipality on behalf of the public. *United Finance Corp. v. Royal Realty Corp.,* 172 Md. 138, 148-49, 191 Atl. 81 (1937); *Canton Co. v. Mayor & C. C. of Baltimore,* 106 Md. 69, 66 Atl. 679 (1907).

The primary effect of Section 12-32, set out in part in the majority opinion, was to prevent a revocation of the offer to dedicate contained in the recorded subdivision plat, except by the procedure in the Circuit Court provided in the statute. The statute changed the common law rules in regard to revocations or abandonment of the offer of dedication by the landowner. But the Act did absolutely nothing to change the common law rule regarding acceptance of the dedication by the public body. We held in *Pope v. Clark,* 122 Md. 1, 89 Atl. 387 (1913) (construing the sister provision to Section 12-32, contained in the Montgomery County Code) that the mere filing of the subdivision plat under the statute *did not constitute an acceptance* of the streets and roads by the public.

Even assuming, *arguendo,* that the Planning Commission, as the taxpayer's representative, may have a right to complain of the proposed abandonment, this right, in my opinion, could not exist and *no damage to the right could occur* until the public body had accepted the dedication offered in the subdivision plat. As filing a plat under the Act had no effect on the duties of the public with respect to the dedicated property, filing a plat likewise had no effect on the rights of the public. *Pope v. Clark, supra.*

The *Pope* case held, in 1913, that the recording of a subdivision plat pursuant to a statute in Montgomery County (Acts of 1894, ch. 622, now sections 17-1 to 17-9, Montgomery County Code, 1965), containing almost identical language as that used in the Act of 1908, did not result in an acceptance of the proposed streets by the public. With respect, I suggest that a close reading of the record and opinion in *Pope* will disclose that this is a *holding* and not a *dictum,* as indicated in Note 1 in the majority opinion.

In *Pope,* the defendants-appellees, and the plaintiff all owned lots in a subdivision. The defendants put in sewers, which were installed at their expense and were not laid in that half of the streets upon which the lots of the plaintiff directly abutted nor within the line of his deeds. Upon plaintiff's bill for an injunction, the Chancellor sustained the defendant's demurrer and dismissed the bill. The decree was sustained on appeal. The decision of the Chancellor and of the Court of Appeals did not

rest solely "on the ground that Pope [the plaintiff] had shown no impending damage." The opinion of the Court, and the briefs, make certain that *two* arguments, mutually exclusive, were presented by the plaintiff to the lower court and on appeal:

1. By the recording the subdivision plat, the streets shown on it became public streets and the right to their use and control for street purposes passed out of the owner and became vested in the public. Therefore, the construction of the sewers was unlawful, because not authorized by the General Assembly.

2. Even if the construction of the sewers was lawful, the continuation and maintenance of the sewers created a nuisance *per se*.

In affirming the Chancellor on appeal, this Court decided the case on two grounds: (1) that the mere filing of the subdivision plat did not make the streets public highways; and (2) that there were insufficient allegations of impending damage for relief to be granted on the ground that the sewers constituted a nuisance. Both points of decision were necessary to a determination of the case. Judge Burke, for the Court, stated in regard to the filing of the plat:

> "But the mere recording of the plat [under the dedication statute] did not make the streets public highways or public roads. There must be not only a dedication, or a right acquired by proscription, but there must also be an acceptance before the road becomes a public road that the County Commissioners are obliged to maintain. * * * Not only is such an acceptance necessary, but must be proved.' State, use of James v. Kent County, 83 Md. 377." (122 Md. at 9, 89 Atl. at 389.)

I perceive no inconsistency between this holding in *Pope* and the holding in *Whittington v. Good Shepherd Evangelical Lutheran Church,* 236 Md. 185, 202 A. 2d 751 (1964), which the majority indicates overrules the *"dictum"* in *Pope* by implication. On the contrary, as I see it, the two cases are entirely consistent. *Whittington,* a case arising in Prince George's County, involved a subdivision plat which *was required by*

*statute to be approved by the Planning Commission prior to recordation.* The plat, in fact, had been approved as required. We held that this approval with the subsequent recordation of the approved subdivision plat constituted *an acceptance* by the public of the area designated on the plat for use as public streets. Judge Anderson, for the Court, stated:

> "Section 308 [now Section 12-32] clearly sets out that upon recording of a plat the area designated in said plat as streets, roads, avenues, lanes, alleys and public parks shall be and the same are hereby declared to be forever dedicated to public use, *meaning that upon approval of the subdivision plat for recording* by the appropriate *public officers, such approval and subsequent recording of the plat constitutes dedication and acceptance* of the areas on the plats shown as streets, roads, avenues, etc." (Emphasis supplied.) 236 Md. at 192, 202 A. 2d 755.

We have held in *Small v. State Roads Commission,* 246 Md. 652, 229 A. 2d 408 (1967), that it is the *approval* of the subdivision plat by the appropriate public officials which operates as the acceptance by the public of the dedication. In the present case, no approval of the subdivision plat by any public official prior to recordation was either required or given, as an examination of the subdivision plat plainly shows; [1] in *Whittington* such prior approval was required and was given. The dedication in *Pope* was not contrary to that in *Whittington* and, indeed, the *Pope* case probably is not cited in the opinion in *Whittington* because this fundamental legal and factual difference made *Pope* inapplicable. In my opinion, the alternative

---

1. It will be observed that in the original Act of 1908 there was no provision for approval of the subdivision plat by the County Commissioners, or the Planning Commission or any other public body of like nature. Indeed there was no Planning Commission in existence in 1908. The Commission was not created until April 16, 1927 by the Act of 1927, ch. 448. Under the 1908 Act, the Clerk of the Circuit Court for Prince George's County was *directed* to file the subdivision plat when offered for recordation *by the owner of the land* when there had been compliance with the provisions of the Act.

holding in *Pope* correctly construes the statute, is still effective, has been acquiesced in by the General Assembly and should have been followed by us in the present case.

By following the alternative decision in *Pope,* we also avoid a construction possibly rendering the statute unconstitutional. It is well settled that we should construe the statute so that it will survive the test of constitutionality. *Middleman v. Maryland National Capital Park and Planning Comm'n,* 232 Md. 285, 289, 192 A. 2d 782 (1963), and authorities therein cited.

If the unilateral filing of a subdivision plat by the owner of land is held, *ipso facto,* to result in an acceptance by the public body of the proposed streets and roads, there might well be an unconstitutional attempted delegation of governmental police power to individual land owners. The objections to surrender by a governmental body of its police power has recently been fully discussed, in respect to a "contracting away" of that power in my dissent in *Mayor & C. C. of Rockville v. Brookeville Turnpike Construction Co.,* 246 Md. 117, 228 A. 2d 263 (1967). The principles and authorities noted in Part 3a of that dissent are similarly applicable to the present case.

In addition, it may be thought that the avowed intent of the Planning Commission to resist the abandonment of the street area so that the public body would not have to pay the land owner as much money for that area when it is condemned for use as a park is an attempt to take the land owner's property without the payment of just compensation, contrary to the provisions of Article III, Section 40 of the Maryland Constitution. See *Association of Independent Taxi Operators, Inc. v. Yellow Cab Co.,* 198 Md. 181, 192, 82 A. 2d 106 (1951). It is clear from the record that the Planning Commission, as and when it condemns the adjoining land, has no intention of using this area for *street purposes in accordance with the subdivision plat,* but solely for *park purposes.* Indeed, under the applicable law in Prince George's County, the Board of County Commissioners —and not the Planning Commission—has the general duty and power to pave and maintain the public streets and roads in Prince George's County. Section 64-1, Prince George's County Code (1963). A street area, dedicated for street purposes, cannot be used as a park. *Kennard v. Eyermann,* 267 Mo. 1, 182

S. W. 737 (1916). In short, the Planning Commission is attempting to take the use of street areas for public park purposes, without paying the land owner for a use not accepted by the public authority. In my opinion, this is not constitutionally permissible. *Association of Independent Taxi Operators, Inc. v. Yellow Cab Co., supra.*

(3)

Even assuming, *arguendo,* that the Planning Commission has status as a party and that there has been an acceptance of the street area by the public, the majority are, in my opinion, in error in holding as a *matter of law* that the Planning Commission—or any one else—can be damaged by the proposed abandonment.

The record establishes that the lower court decided against the Planning Commission upon the pleadings and arguments of counsel. The reasons for the lower court's decision are not given and counsel made no request for such reasons pursuant to Maryland Rules 18 c and 564 b 2. We have several times recently strongly recommended that such a request be made. See *Southwestern Mines, Inc. v. P. & J. Coal Company, Inc.,* 244 Md. 180, 184, 223 A. 2d 162 (1966) and cases therein cited. It is most helpful to us to have the lower court's reasons for its rulings and we trust that counsel will hereafter freely avail themselves of the provisions of the Maryland Rules.

In any event, it is clear that no testimony was taken to establish what,' if any damage the Planning Commission, in its representative capacity or otherwise, *in fact,* could possibly suffer from the abandonment. The Act specifically requires that the trial court be "convinced * * * upon proof" what, if any, damage may be sustained. This means to me that if the pleadings present an issue of whether damage may be sustained by a party having status to object to the abandonment and who may possibly suffer damages as contemplated by the Act, the trial court must proceed to determine the nature of such damages, as matter of fact, upon the evidence produced in the trial of the case. As stated before, there is no showing that the Prince George's County tax rate could possibly increase as a result of the proposed abandonment.

In my opinion, even assuming the correctness of the ma-

jority opinion otherwise, the case should be remanded to the trial court to make the determination required by the Act upon proof at a hearing to be held after the return of the mandate from this Court.

I am authorized to state that Judge Marbury and Judge Mc-Williams concur in the views herein expressed.