**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, a body corporate, Plaintiff,**

v.

**ONE PARCEL OF LAND IN MONT-GOMERY COUNTY, MARYLAND et al., Defendants.**

Civ. A. No. M–74–1326.

United States District Court, D. Maryland.

April 19, 1976.

Gary M. Peterson, Land and Natural Resources Div., Dept. of Justice, Washington, D.C., for plaintiff.

David Macdonald, Silver Spring, Md., for defendants Florence W. Pratt and Charles Thomas Pratt.

## OPINION

JAMES R. MILLER, Jr., District Judge.

The plaintiff, Washington Metropolitan Area Transit Authority (WMATA), has sued in this action to acquire by eminent domain 3,367 square feet of land in Montgomery County to be used in the construction, maintenance, and operation of a rapid rail transit system for the Washington Metropolitan Area, commonly called "Metro." The property is sought to be acquired in fee simple absolute.

The land lies within the bed of a "paper street," known as Selim Road which was dedicated to public use as a road by a plat recorded among the Land Records of Montgomery County, Maryland on June 7, 1922, in Plat Book 3 at Plat No. 229, being a plat of "BLAIR, Section 1." The segment of Selim Road in which the property in issue lies has never been constructed nor used as a public street and has not been accepted for maintenance by Montgomery County.

Abutting the subject portion of the road bed of Selim Road on the west is the right-of-way of the B & O Railroad. Abutting it on the east is Lot 16, Block I, "BLAIR, Section 1" which is owned by the defendants, Florence W. Pratt and Charles Thomas Pratt, her son. It has been stipulated by the parties hereto that Florence W. Pratt and Charles Thomas Pratt, as the owners of Lot 16, are the owners of the underlying fee simple absolute title to that portion of the road bed of Selim Road which abuts Lot 16 for the entire width of Selim Road.

By agreement of the parties, this case was tried to the court without a jury. The facts are essentially undisputed.

The parties agree that the property condemned is to be valued as of September 1,

1973, the date upon which the plaintiff took possession. The condemned property has not been assessed for real estate tax purposes since 1922 when the original plat dedicating it to highway use was recorded.

It is agreed that, under the law in effect in Montgomery County on September 1, 1973, the subject portion of the bed of Selim Road would have been governed by the zoning regulations applicable to Lot 16 in the event that a petition had been granted for the abandonment of the public right-of-way over said road bed. Lot 16 at that time was classified in the I–1 (light industrial) Zone under the Zoning Ordinance of Montgomery County, Maryland.

On September 1, 1973, and prior thereto, there were no existing or proposed water or sewer facilities in the subject part of the road bed of Selim Road. Neither the Washington Gas Light Company nor the Chesapeake & Potomac Telephone Company had any facilities in the subject road bed of Selim Road. The Potomac Electric Power Company had an electric pole line along the edge of Selim Road, but, in the past, the presence of such a line has never prevented the abandonment of a "paper street," the problem generally being resolved by the fee simple owner giving the electric company a pole line easement.

It has been stipulated that Section 50–15, Montgomery County Code 1972, is a statutory authority which would have been applicable to the petition for abandonment of the subject portion of the bed of Selim Road if such petition had been filed on or prior to the date of taking, September 1, 1973. That statute provides, in pertinent part, as follows:

".  .  . the maker of any such plat, his heirs or assigns, shall have the right to apply by petition to the circuit court for the county for the leave to abandon the subdivision of lands so made by him, or any part thereof  .  .  .; provided the area to be abandoned has not been used by the general public or accepted for maintenance by the county and the court, if convinced upon such proof  .  .  . that no damage can be in anywise sustained by the general public or persons other than the petitioners, shall have power to pass an order authorizing and empowering such petitioner to abandon such subdivision either in whole or in part .  .  .."

The statute goes on to provide that upon the filing of such a petition, the petitioner shall serve a copy thereof upon the Montgomery County Executive, upon the Maryland National Capital Park and Planning Commission or the County Planning Board, upon the Washington Suburban Sanitary Commission, and upon certain public utility companies and that the court, in arriving at its decision on the petition of abandonment, shall consider any recommendation filed by those agencies or utility companies.

From all the evidence in the case the court finds as a fact, indeed it is not seriously disputed, that no public agency, or public utility, or private adjacent or abutting neighboring property owners would have objected to the abandonment of the subject portion of the road bed of Selim Road on or about September 1, 1973, but for the desire and plan of WMATA to utilize part of said property in connection with the construction of the Metro. The court finds, however, that one or more of the public agencies involved would have been virtually certain to have objected to the abandonment of the subject portion of the road bed of Selim Road in any abandonment proceeding instituted by a private party in 1973. The objection would have been based upon the ground that WMATA planned to acquire and utilize said property in conjunction with the construction of Metro, and that abandonment of the street dedication would increase the cost of acquisition of the property for said purpose.

The function of this court is to value the underlying fee simple absolute interest which the defendants, Florence Pratt and her son, had in the aforesaid property on September 1, 1973. If the easement for Selim Road over the subject property must be considered for the purposes of this case as being incapable of being abandoned, then the value of that interest is nominal. If, on

the other hand, there were a reasonable possibility on September 1, 1973, that the abandonment could have been achieved, such possibility must be considered in arriving at the value of the underlying fee simple absolute interest.

The Court of Appeals of Maryland, in *Maryland-Nat. Capital Park and Planning Commission v. McCaw*, 246 Md. 662, 229 A.2d 584 (1967), enunciated the effect of the operative language of a statute which was essentially identical with the relevant parts of section 50–15 of the Montgomery County Code. In that case, the court concluded that the abandonment of "paper streets" could not be granted where the possibility existed that taxes might be increased by virtue of the increased cost of the later acquisition of the land in a subsequent condemnation proceeding for a different public purpose from that for which the property was originally dedicated. Noting that the statute provided that abandonment could be ordered only if "no damage can be in anywise sustained by the general public" and that the property, on which the "paper streets" in that case were located, was proposed to be acquired for public use by the Maryland National Capital Park and Planning Commission for a proposed regional park, the court stated as follows:

> "Under the strict, unequivocal test of the abandonment provision, if the abandonment could increase the amount which the Commission might have to pay for the land in which the dedicated streets are located, the taxpayers of the District would be damaged and the proposed abandonment must be disapproved." 246 Md. at 675, 229 A.2d at 591.

Article 41, section 317–82, *Md.Ann.Code* (1971 Repl. Vol.), provides that WMATA shall have the power to acquire real property by eminent domain and that any award to a property owner as a result of such proceedings shall be paid by WMATA itself, rather than by Maryland, or Montgomery County, among other governmental entities. Montgomery County, however, is located within the "Washington Metropolitan Area Transit zone"[1] and as such is required, if necessary, to share equitably in the costs of the Metro System.[2] Financial commitments for the construction of that portion of the transit system located in Maryland are required to be made by way of contract or agreement between WMATA and the Washington Suburban Transit District.[3] Chapter 870 of the *Laws of Maryland* (1965) created the Washington Suburban Transit District, a body corporate, which embraces the Counties of Montgomery and Prince George. The Washington Suburban Transit District (WSTD) is authorized to enter into contracts with WMATA to provide funds for the capital required for the construction of the Metro System.[4] WSTD's contract obligations are guaranteed by Montgomery and Prince George's Counties, respectively, in appropriate proportions.[5] For the purpose of meeting the financial obligations imposed on WSTD, the Act provides:

> ". . . There shall be levied against all the assessable property within the District, by the County Council and Board of County Commissioners of Montgomery and Prince George's Counties, respectively, annually, a tax sufficient to meet these obligations and expenses as they mature or become payable. . . ."[6]

Since the abandonment of the "paper street" known as Selim Road would undoubtedly increase the cost of acquiring the land for use in connection with the construction of a rapid rail system, there exists within the meaning of *McCaw, supra,* far more than a mere possibility that such an abandonment would ultimately result in increased taxes to the taxpayers of Montgom-

---

1. Article 41, § 317–3, *Md.Ann.Code* (1971 Repl. Vol.).

2. Article 41, § 317–16, *Md.Ann.Code* (1971 Repl. Vol.).

3. Article 41, § 317–18, *Md.Ann.Code* (1971 Repl. Vol.).

4. Chapter 870, § 12(a), *Laws of Maryland* (1965).

5. Chapter 870, § 13, *Laws of Maryland* (1965).

6. Chapter 870, § 14, *Laws of Maryland* (1965).

ery County. This being so, under Maryland law, the abandonment of the subject portion of Selim Road could not have properly been allowed in 1973. *Planning Commission v. McCaw, supra.*

Accepting, then, that the abandonment would have been denied for the sole reason that its granting would have resulted in a higher cost of acquisition of the land for WMATA's use in the Metro system, the question remains whether such an interpretation of Maryland law, if given effect in this condemnation proceeding, results in deprivation of property without payment of just compensation. This court answers that question in the affirmative.

■ An easement, which otherwise would have been extinguished upon request of the landowner, may not be used by a government to diminish the value of the fee simple interest in the land in order to allow that government or other public agency to acquire said fee simple interest by eminent domain at a lesser cost for a purpose entirely different from that for which the easement originally existed. Such action would be an abuse of governmental authority, resulting in a denial of due process, no different in principal than using the zoning process for the purpose of depressing values in eminent domain proceedings. *United States v. Meadow Brook Club,* 259 F.2d 41, 45 (2d Cir.), *cert. denied,* 358 U.S. 921, 79 S.Ct. 290, 3 L.Ed.2d 239 (1958); *Symonds v. Bucklin,* 197 F.Supp. 682 (D.Md.1961); *Robertson v. City of Salem,* 191 F.Supp. 604 (D.Or.1961); *see also United States v. Virginia Electric & Power Company,* 365 U.S. 624, 631–636, 81 S.Ct. 784, 789–92, 5 L.Ed.2d 838, 846–49 (1961); *United States v. 222.0 Acres of Land, More or Less, Worcester County, Maryland,* 324 F.Supp. 1170, 1180 (D.Md.1971); *Foster v. City of Detroit, Michigan,* 254 F.Supp. 655, 663 (E.D.Mich. 1966).

The case here is significantly different from *Reservation Eleven Associates v. District of Columbia,* 136 U.S.App.D.C. 311, 420 F.2d 153 (1969), heavily relied upon by WMATA. In that case the District of Columbia was seeking by eminent domain to acquire for a freeway a city block of property which was bisected by several alleys. The property owner contended that its land should be valued as if the alleys were closed, thereby permitting the erection of a larger building on the unified block and increasing the value of the land sought to be acquired. Although there was evidence that the District of Columbia Commissioners in the past had routinely granted alley abandonment where no contiguous landowners objected, the Commissioners refused to abandon the alleys in question in that case because of the possibility they (i.e. the land comprising them) would be needed for the freeway. The land comprising these alleys belonged to the United States because they were "original alleys." *Id.* at 156. Apparently those "original alleys" were derived from the original cession of land to the United States Government for the site of the seat of government and were not alleys which were established by dedication of an easement to public use by landowners in the way the subject road bed of Selim Road was dedicated. To have closed the alleys involved in the *Reservation Eleven Associates* case would have resulted in an outright gift of the land included within those alleys to the abutting landowners. In this case, however, unlike the situation in *Reservation Eleven Associates v. District of Columbia* as to the alleys, the defendants, Mrs. Pratt and her son, owned the underlying fee simple absolute title to the subject property. They would not be seeking a gift in an abandonment proceeding, but would be attempting to have an easement removed from land which they already owned when the reason for that easement no longer existed.

■ Having previously found that the subject portion of Selim Road would have been permitted to have been abandoned in 1973 but for the sole reason that WMATA wished to acquire said land at a lower cost for a different purpose from that to which the fee simple absolute title was made subservient, this court will not give substantial effect to the existence of the public easement for Selim Road in this condemnation

case brought by WMATA. The court will value the subject property as if the easement for street purposes did not exist, discounting, however, that value by 10% to account for the cost and inconvenience which any willing seller and any willing buyer of the property on September 1, 1973, would reasonably have anticipated would have been necessary to achieve the abandonment required before any private use could have been made of the property.

■ The court finds from the evidence that the fair market value of the subject property, unencumbered by the easement for Selim Road, would have been $9.50 per square foot.

Unencumbered by the easement for Selim Road, the subject property would have been part of an assembly of industrial land, owned by Mrs. Pratt and her son totaling 8,632 square feet. Considering all the facts, the court finds the fair market value of the subject fee simple absolute interest to be the sum of $28,780 on September 1, 1973. Judgment will be entered in favor of the defendants, Florence W. Pratt and Charles Thomas Pratt, for that sum.